Smith W. BAGLEY, et al., Appellants,

v.

FOUNDATION FOR the PRESERVA-
TION OF HISTORIC GEORGE-
TOWN, Appellee.

Nos. 92–CV–1462, 93–CV–87.

District of Columbia Court of Appeals.

Argued April 5, 1994.

Decided April 26, 1994.*

---

* This decision was initially issued as a Memoran-
dum Opinion and Judgment. This court subse-
quently granted appellee's motion for publica-
tion.

Ronald M. Miller, Greenbelt, MD, for appellants.

Richard B. Nettler, Washington, DC, for appellee.

Before FERREN, SCHWELB and KING, Associate Judges.

SCHWELB, Associate Judge:

In this action by the Foundation for the Preservation of Historic Georgetown against Smith W. Bagley and Elizabeth A. Frawley (collectively Bagley) to enforce the terms of an easement agreement, the trial court granted summary judgment in favor of the Foundation and awarded the Foundation substantial counsel fees. Bagley makes numerous contentions on appeal, and claims in particular that there were genuine issues of material fact precluding the entry of summary judgment and that the award of counsel fees was excessive. In No. 92–CV–1462, we dismiss as premature, *sua sponte*, Bagley's appeal from the decision to award the Foundation counsel fees. As to the remainder of No. 92–CV–1462, and in No. 93–CV–87, we affirm.

I.

In 1988, Bagley executed an easement agreement with the Foundation relating to his home, which is located at the corner of 29th and Q Streets, N.W., Washington, D.C. Running 22 pages, the agreement prohibits Bagley from building any structure on his property, encroaching on any presently open space, or obstructing a view of the building facade from the street, without first obtaining the written consent of the Foundation for any such action. In late 1989, Bagley began constructing a two-story addition on the back side of the house. The stated purpose of the structure was to provide support for new air conditioning units which Bagley was installing because the older ones allegedly presented a fire hazard.[1]

Upon learning of the addition in December, 1989, the Foundation informed Bagley that he had violated the agreement by failing to obtain the Foundation's permission before beginning construction. The Foundation also claimed that the addition itself violated the easement by increasing the area (footprint) of the existing house. In a letter to

---

1. Bagley did not obtain a building permit for this construction, as required by D.C.Code § 5–426 (1989), and he was cited by the District for daily violations. Ultimately, the District and Bagley agreed to the entry of a consent decree which required Bagley to pay $5,000 in fines and to obtain a building permit. As a part of the settlement, Bagley neither admitted nor denied any violation.

the Foundation, Bagley acknowledged that he "probably should have requested special permission to make changes." Bagley nevertheless requested an accommodation which would permit him to retain the addition. The Foundation advised Bagley that it would consider alternative design proposals only after he had removed the addition.

Bagley declined to comply with the Foundation's demands and, in February, 1991, the Foundation filed a two-count complaint against him in the Superior Court. In Count I, the Foundation alleged violations of the easement agreement. In Count II, the Foundation claimed that Bagley had violated D.C.Code § 5–426 (1989) by constructing the addition without first having obtained a building permit and appropriate zoning variances. The Foundation sought an injunction requiring Bagley to remove the addition, as well as declaratory and other relief and an award of counsel fees.

Bagley filed an answer in which he disputed the Foundation's construction of the agreement.[2] He also counterclaimed, alleging selective enforcement of the agreement by the Foundation,[3] as well as what he characterized as "due process" violations by this private organization.[4] Bagley requested $1,000,000 in damages and the reformation or rescission of the easement agreement.

The Foundation filed a motion for summary judgment in its favor as to both counts of its complaint. On November 2, 1991, Judge Shellie Bowers denied the motion "without prejudice to [its] being re-submitted and reconsidered following discovery relating to [Bagley's] Amended Answer and Counter-

claim."[5] On the same date, the judge also denied Bagley's motion to dismiss Count II of the Foundation's complaint. Following extensive discovery by Bagley on the purported selective enforcement issue, the Foundation renewed its motion for summary judgment. Bagley filed his own motion for summary judgment, in which he requested dismissal of Count II of the Foundation's complaint on the ground that the Foundation lacked standing to enforce the proscriptions contained in § 5–426.

On June 19, 1992, Judge Stephen F. Eilperin, to whom the case had been transferred,[6] granted the Foundation's motion for summary judgment and ordered Bagley to obtain a demolition permit and to remove the addition. The judge also dismissed Bagley's counterclaim with prejudice, and held, in conformity with a specific provision of the easement agreement, that Bagley would be required to pay the Foundation's counsel fees. Bagley filed a motion to alter or amend the judgment regarding the award of counsel fees and requested a ruling on his own motion for summary judgment. While this motion was under consideration, the Foundation submitted an affidavit in support of its claim for counsel fees and costs.

The trial judge denied both of Bagley's motions. Although the amount of counsel fees had not yet been determined, Bagley filed a notice of appeal.[7] He requested this court to stay the trial court's injunction pending appeal and to order the trial court not to hold a scheduled hearing to determine the amount of counsel fees. On December 18, 1992, this court stayed the injunction pending

---

2. Bagley asserted that he had granted an easement to the Foundation on his previous home in Georgetown. He contended that the prior easement had only prohibited him from altering the view of the house from the street, and that he believed that the restrictions in the present easement were the same.

3. The Foundation has other easements in historic Georgetown. Bagley claimed that in other situations in which parties subject to such an easement had acted without the Foundation's permission, the Foundation had either bargained with them or waived the easement restrictions.

4. Bagley has described the Foundation as a "quasi-governmental entity," but has proffered

nothing to suggest that it is a governmental actor subject to the proscriptions of the Fifth Amendment.

5. Since the denial of the motion was without prejudice, we do not agree with Bagley's contention that Judge Stephen F. Eilperin's subsequent award of summary judgment to the Foundation contravened the doctrine of "the law of the case."

6. Except as otherwise stated, all further references in this opinion to the judge or to the trial judge are to Judge Eilperin.

7. No. 92–CV–1462.

appeal, but declined to stay the scheduled hearing. The trial judge then held the hearing and, at the conclusion thereof, ordered Bagley to pay $78,304.85 in costs and fees.[8] Bagley noticed a second appeal,[9] and the two appeals were consolidated by order of this court.

## II.

■ The legal standard applicable to a motion for summary judgment is well-established, *see, e.g.,* Super.Ct.Civ.R. 56; *Holland v. Hannan,* 456 A.2d 807, 814–15 (D.C.1983), and we need not repeat it here. In controversies regarding the correct interpretation of a contract, summary judgment may be granted when the agreement is unambiguous and where there is no question as to the parties' intent. *Id.* at 815. "Absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Id.* A contract is not ambiguous simply because the parties have disputed interpretations of its terms. The question whether ambiguity exists is one of law, and must be decided by the court. *Id.*

■ In the present case, the trial judge correctly concluded that the easement agreement is clear on its face and that it unambiguously proscribes Bagley's erection of the addition. The agreement expressly prohibits, among other things, the erection of additional structures on the property and the extension of the existing building into presently open space. The agreement also requires Bagley to obtain the written consent of the Foundation before making any changes in the facade of the improved structure, or before constructing anything on the premises which would encroach on the open land area surrounding the structure and interfere with the public view of the facades. Bagley's claims to the contrary notwithstanding, nothing in the language of the agreement purports to limit its application to the front of the house and property only. Although the agreement authorizes Bagley to replace air-conditioning units, this provision obviously does not permit him to erect otherwise prohibited structures.

We have considered all of Bagley's claims of ambiguity in relation to the application of the agreement to the unauthorized construction in which he engaged, and find each to be altogether unpersuasive. "The court may not create ambiguity where none exists." *Carey Canada, Inc. v. Columbia Casualty Co.,* 291 U.S.App.D.C. 284, 292, 940 F.2d 1548, 1556 (1991); *see also Lowman v. United States,* 632 A.2d 88, 92 n. 6 (D.C.1993) (court must resolve an ambiguity, but may not beget one).

■ Section (4)(f) of the agreement provides that the Foundation will "exercise reasonable judgment and care in performing its obligations and exercising its rights under the terms of this easement." Bagley contends that it was unreasonable for the Foundation to demand that Bagley demolish the addition before any negotiations could take place, when the Foundation had allegedly negotiated with other persons who had granted the Foundation similar easements and had sometimes waived its rights. Section 10 of the agreement, however, authorized the Foundation, at its option, either to bring suit to correct any violation by Bagley, or, in the alternative, to "enter upon the Premises, correct any such violation, and hold [Bagley] responsible for the cost thereof." Since the Foundation had the right, under the agreement, to tear down the unauthorized construction, its insistence that Bagley do so prior to any negotiations was a less harsh response to Bagley's breach than at least one permissible alternative course of action. The Foundation's exercise of a right unambiguously authorized by the agreement was reasonable as a matter of law.

Accordingly, we conclude that the judge correctly granted summary judgment to the Foundation on its contractual claim. We therefore need not and do not reach the issues presented regarding Count II of the complaint, in which the Foundation claimed

---

8. The judge also awarded the Foundation the additional amount of $11,849.56 as a counsel fee for preparing its fee petition.

9. No. 93–CV–87.

to have standing to enforce the provisions of D.C.Code § 5–426.

## III.

 The legal theories on which Bagley's counterclaim was founded are, in our view, altogether lacking in merit. The Foundation, a private non-profit corporation, is not subject to constitutional restrictions on state action. *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 1002–05, 102 S.Ct. 2777, 2784–86, 73 L.Ed.2d 534 (1982). Bagley has proffered, at most, unilateral error on his own part as to the meaning of the agreement, and he is not entitled, after the fact, to its rescission or reformation in the absence of some showing that the Foundation knew or should have known of his erroneous understanding. *See Flippo Constr. Co. v. Mike Parks Diving Corp.,* 531 A.2d 263, 271 (D.C.1987). Finally, Bagley has cited no constitutional, legislative, or common law authority—and we know of none—under which one who has breached a contract with a private actor may escape the consequences of his breach upon the ground that the party seeking to enforce the agreement has acted more leniently *vis-a-vis* persons who have failed to comply with separate agreements with the enforcing party.[10]

## IV.

 In No. 92–CV–1462, Bagley has attempted to challenge the trial court's decision holding that the Foundation was entitled to an award of costs and counsel fees although that order was issued before the amount of costs and fees was determined. "An award of attorney's fees is final when the trial court has determined the quantum of attorney's fees to be paid, not when the trial court merely establishes entitlement to attorney's fees in an amount to be later determined." *Marlyn Condominium, Inc. v. McDowell,* 576 A.2d 1346, 1347 n. 1 (D.C.1990) (quoting *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979) (internal quotation marks omitted)); *see* D.C.Code § 11–721(a)(1) (1989). Accordingly, we dismiss as premature, *sua sponte,* so much of appeal No. 92–CV–1462 as challenges the award of counsel fees in an unspecified amount.[11]

 In No. 93–CV–87, Bagley challenges the amount of the trial court's fee award. He contends, *inter alia,* that the Foundation "double-billed" him by utilizing two attorneys instead of one; that far too many hours were billed; that there was duplication in the amounts awarded; and that Judge Eilperin awarded counsel fees for work done earlier in the case for which Judge Bowers had previously declined to compensate the Foundation. Judge Eilperin agreed in part with Bagley's complaints and disallowed forty hours of the associate's time. Consequently, the amount awarded by the judge was approximately $5,000 less than the Foundation's demand. Bagley insists that, even as reduced, the award was far too high, and he asserts that the judge's oral findings were insufficiently detailed.

There is no gainsaying that the amount of counsel fees awarded to the Foundation was substantial, especially since this case never went to trial. As we observed in *Henderson v. District of Columbia,* 493 A.2d 982, 1001 (D.C.1985), however,

> while Parties against whom attorney's fee awards may be sought are not "required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponent and thus, if unsuccessful, be required to bear that cost." *McGowan v. King,* 661 F.2d 48, 51 (5th Cir.1981).

Bagley "cannot litigate tenaciously and then be heard to complain about the time neces-

---

10. There is apparently little authority on the subject, perhaps because a defense of selective enforcement under these circumstances is patently implausible. *But see Baker v. Heatherwood Homeowners Ass'n,* 587 So.2d 938, 942 (Ala. 1991); *Horne v. Radiological Health Serv.,* 83 Misc.2d 446, 371 N.Y.S.2d 948, 959–61 (1975). Even in criminal cases, a defendant cannot ordinarily defeat a prosecution by the government upon the ground that other violators have not been prosecuted; rather he must establish that his prosecution was motivated by a racially discriminatory or other invidious purpose. *See, e.g., Federov v. United States,* 600 A.2d 370, 377 (D.C. 1991) (en banc).

11. The injunctive order, however, is properly before us in No. 92–CV–1462. *Marlyn Condominium, supra,* 576 A.2d at 1347 n. 1.

sarily spent by the plaintiff in response." *Henderson*, 493 A.2d at 1001 (quoting *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 414, 641 F.2d 880, 904 (1980)).

In the present case, a clear violation of the easement agreement was brought to Bagley's attention at an early date. It was or should have been readily apparent that Bagley had no viable defense. Instead of coming promptly into compliance, Bagley interposed various defenses and counterclaims, some of which (*e.g.* his "due process" claims, his "selective enforcement" theory, and his demands for "reformation" and "rescission") were, in our view, patently frivolous.[12] Approximately two-thirds of the Foundation's billable hours were addressed to discovery and litigation regarding Bagley's altogether implausible defense theories and counterclaims.

Section 10(d) of the easement agreement provides that

> [i]n the event [Bagley is] found to have violated any of [his] obligations, [he] shall reimburse [the Foundation] for any costs or expenses incurred in connection therewith, including court costs and attorneys [sic] fees.

The agreement does not explicitly state that the Foundation's counsel fees must be reasonable, but counsel for the Foundation acknowledged at argument that reasonableness is required even where, as here, the right to an award is based on an agreement of the parties. *Cf. Auxier v. Kraisel*, 466 A.2d 416, 420–21 (D.C.1983) (per curiam).

The determination of the reasonableness of an award of counsel fees is a matter addressed to the trial court's sound discretion. *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1280 (D.C.1990). An award will be reversed only upon an "extremely strong showing [which will] convince this court that an award is so arbitrary as to constitute an abuse of discretion." *Padgett v. Padgett*, 478 A.2d 1098, 1100 (D.C.1984) (per curiam) (quoting *Ritz v. Ritz*, 197 A.2d

155, 156–57 (1964)). Moreover, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *see also Hampton Courts Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 599 A.2d 1113, 1115 (D.C.1991). The trial court's findings must be reasonably specific, but "trial judges are not required to engage in a document-by-document examination of the case record and compare each document to the attorney's time claims with respect thereto." *Henderson, supra*, 493 A.2d at 1001.

Although the judge's findings in this case might have been more detailed, *cf. Jerry M.*, 580 A.2d at 1279–82, we find no abuse of discretion. Bagley does not (nor could he reasonably) challenge the hourly fee either of the partner or of the associate who represented the Foundation. For a case of this magnitude, with a counterclaim for a million dollars, it was not unreasonable for the Foundation to have two attorneys.[13] Given the nature of Bagley's defenses and counterclaim and the extensive discovery which they precipitated, expenditure of numerous attorney hours was inevitable. The Foundation's basic calculation of the "lodestar" was sound.

The judge gave careful consideration to Bagley's contentions. Indeed, he sustained them at least to a limited extent, disallowing forty hours of the associate's time. We cannot say that, as a matter of law, the judge was obliged to pare the demand even further. Our vantage point is necessarily removed from the fray, while the trial judge was on the scene and in a far better position than we are to assess what this case required of counsel for the Foundation. We decline to second-guess him.

### V.

For the foregoing reasons, so much of Appeal No. 92–CV–1462 as seeks to challenge the award of counsel fees is dismissed by the court, *sua sponte*. In all other re-

---

12. Bagley also argued, baselessly in our view, that the Foundation owed a fiduciary duty to him.

13. If only one attorney—the partner—had represented the Foundation throughout this case, the total fee might have been higher as a result of his higher hourly rate.

spects, the orders appealed from must be and each is hereby

*Affirmed.*