David C. GRYCE, et al., Appellants,

v.

Irvin A. LAVINE, Appellee.

No. 94–CV–1310.

District of Columbia Court of Appeals.

Argued Oct. 31, 1995.
Decided April 25, 1996.

Robert L. Bredhoff, with whom Jacob A. Stein was on the brief, Washington, for appellants.

James E. McCollum, Jr., Washington, for appellee.

Before STEADMAN, RUIZ and REID, Associate Judges.

STEADMAN, Associate Judge:

Irvin A. Lavine, who was a senior partner with the law firm of Mason, Fenwick & Lawrence ("MFL"), left the firm at the age of sixty-eight and continued the practice of law with another firm. A dispute arose whether, under the partnership agreement, Lavine's departure was a "retirement," entitling him to retirement benefits, or simply a "withdrawal."

The issue in this appeal is whether the trial court erred in granting summary judgment in favor of Lavine. The trial court ruled that the partnership agreement unambiguously entitled Lavine to retirement benefits, regardless of whether he practiced law elsewhere after leaving MFL. We are constrained to disagree. Accordingly, we vacate the grant of summary judgment and remand for further proceedings.

## I.

Lavine became affiliated with MFL in 1981. He became a partner of MFL in 1983, and a senior partner in 1986. On February 1, 1993, Lavine and several of the appellants executed the relevant partnership agreement governing the operation of MFL.[1] Section IX of the February 1993 agreement, entitled "Withdrawals," provides that:

Any partner shall have the right to withdraw from the partnership at any time on not less than three months written notice to the other members of the partnership. In the event of such withdrawal, the withdrawing partner shall be entitled to receive from the partnership within three months from the date of his withdrawal the net amount of his capital account as shown on the books of the partnership as of the date

of his withdrawal without any allowance for goodwill of the partnership.

Section XII of the agreement, entitled "Retirement," provides, in pertinent part, that:

Any partner shall have the right to retire from the partnership and receive certain retirement benefits at any time after attaining the age of sixty-five (65) years, or prior thereto if such partner shall be permanently unable by reason of physical or mental disability to continue the practice of law. To the extent feasible, a retiring partner shall make himself available to the remaining partners for consultation on firm business from time to time on such basis as they may mutually agree. In the event of such retirement, the retiring partner shall be entitled to receive from the partnership:

(a) Within eighteen (18) months from the date of his retirement the amount of his net capital account in the partnership as of the date of his retirement; and

(b) * * * A Senior Partner shall receive the sum of Four Hundred Dollars ($400.00) per week for a period of seven (7) years from the date of his retirement; provided, however, that if he shall die during said seven (7) year period, said payments shall be continued to his estate for the remaining portion of said seven (7) year period.

Lavine left MFL on May 26, 1993 and began practicing law with another law firm. On October 15, 1993, Lavine filed a complaint against appellants, asserting his right to retirement benefits under the partnership agreement. At the close of discovery in Lavine's action against appellants, the parties filed cross-motions for summary judgment. The arguments made by the parties in support of their summary judgment motions are essentially identical to the arguments they now make on appeal.

Appellants contend that, because Lavine continued to practice law after leaving MFL, he withdrew from the partnership under Section IX of the partnership agreement, rather than retiring under Section XII. Appellants argue that former partners—even though

1. This was apparently the latest in a series of partnership agreements. *See* note 6, *infra*.

age sixty-five or older—do not retire within the meaning of Section XII unless they retire from the practice of law altogether. Therefore, according to appellants, Lavine is not entitled to retirement benefits under Section XII, but only to the return of his capital account under Section IX. On the other hand, Lavine argues that, because he left MFL after attaining the age of sixty-five, his departure constituted a retirement within the meaning of Section XII, entitling him to retirement benefits, regardless of whether he continued the practice of law elsewhere.

The trial court, finding Section XII of the partnership agreement unambiguous on its face, concluded that the agreement "does not condition receipt of retirement benefits on anything other than age and retirement from the partnership." The trial court also concluded that Section IX did not illuminate the meaning of Section XII, and that neither section prohibited departing partners from practicing law elsewhere. Accordingly, the trial court entered summary judgment in Lavine's favor.

## II.

In reviewing a trial court's entry of summary judgment, we conduct an independent examination of the record, applying the same standard used by the trial court. *See, e.g., Young v. Delaney,* 647 A.2d 784, 788 (D.C.1994). We affirm if " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983) (quoting Super. Ct. Civ. R. 56(c)). In the area of contract interpretation, the existence of a genuine issue of material fact generally turns on whether or not the contract is ambiguous. *See id.* at 815. Summary judgment is appropriate "when the agreement is unambiguous and where there is no question as to the parties' intent." *Bagley v. Foundation for the Preservation of Historic Georgetown,* 647 A.2d 1110, 1113 (D.C.1994) (citing *Holland,* 456 A.2d at 815).

Whether or not a contract is ambiguous is a question of law for the court. *Hol-*

*land,* 456 A.2d at 815 (citing *Clayman v. Goodman Properties, Inc.,* 171 U.S.App.D.C. 88, 96, 518 F.2d 1026, 1034 (1973)). A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation. *Id.* (citing *Scrimgeour v. Magazine,* 429 A.2d 187, 189 (D.C.1981)). Instead, a contract is ambiguous "when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings." *Burbridge v. Howard Univ.,* 305 A.2d 245, 247 (D.C.1973) (quoting 17A C.J.S. *Contracts* § 294 at 34–35 (1963)). If there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making, the contract is ambiguous. *See Morgan v. American Univ.,* 534 A.2d 323, 330 (D.C.1987). The choice among reasonable interpretations of an ambiguous contract is for the factfinder to make, based on the evidence presented by the parties to support their respective interpretations. *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984); *E.A. Baker Co. v. Haft,* 578 A.2d 706, 708 (D.C.1990).

Appellants proffer certain dictionary definitions of the word "retire" that connote a conclusion of the retiree's career, not merely a move from one firm to another. In addition, certain aspects of the terms of the partnership agreement itself could reasonably support appellants' interpretation that a partner must cease practicing law altogether in order to retire within the meaning of Section XII. Section XII states that, "[t]o the extent feasible, a retiring partner shall make himself available to the remaining partners for consultation on firm business from time to time on such basis as they may mutually agree," suggesting that the parties intended a cooperative relationship between the retiring partner and the firm. Such a cooperative intent might also be reasonably inferred from the nature of the payments provided for in Section XII; those payments appear to represent, at least in part, some compensation for the goodwill of the partnership.[2] To

2. Our observation that payments under Section XII appear to constitute goodwill payments, at

interpret Section XII as covering the departure of a partner who leaves the firm for a competing practice could be inconsistent with the retiring partner's obligation to be available to the firm and with the firm's obligation to pay the retiring partner on account of the firm's goodwill.

Furthermore, Section IX of the partnership agreement by its terms appears to govern all withdrawals from the partnership, without regard to the age of the departing partner. If, as Lavine argues, all partners who attain the age of sixty-five can utilize Section XII and retire from the firm while going on to practice law elsewhere, it is difficult to comprehend why any partner sixty-five or older would ever withdraw under Section IX of the agreement. Given that the agreement, including Section IX, "must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms," *1010 Potomac Assoc. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (citations omitted), the terms of Section IX might support a reasonable inference that the parties intended that at least some partners sixty-five or older would withdraw under Section IX rather than retiring under Section XII.

However, just as the partnership agreement contains some aspects that could reasonably support appellants' interpretation, it also contains other aspects that could reasonably support Lavine's interpretation. Although appellants contend that Section XII applies only to partners who retire from the

practice of law altogether, Section XII by its terms applies to partners who retire "from the partnership." This language could support a reasonable inference that a departing partner need not cease the practice of law altogether in order to come within the provisions of Section XII.

Moreover, we view the contract in the context of the circumstances in which it was made, including the legal context. The law in general and the Rules of Professional Conduct in particular view covenants not to compete with some suspicion. *See generally Ellis v. James V. Hurson Assoc.*, 565 A.2d 615, 618 & n. 12 (D.C.1989) (describing a post-employment covenant not to compete as "a form of restraint of trade" and discussing D.C.Code § 28–4502, which prohibits contracts in unreasonable restraint of trade); *see also* D.C. RULES OF PROFESSIONAL CONDUCT Rule 5.6. In light of this general principle, the absence of an express provision prohibiting retiring partners from practicing law with other firms could reasonably support an inference that the parties did not intend Section XII to include such a prohibition.[3]

In addition, to the extent that the payments provided for in Section XII constitute compensation for good will, an alternative to an interpretation of that feature favoring appellants' position, discussed above,[4] could be to view it instead as a recognition by the parties that partners who have attained the age of sixty-five are likely to have contributed substantially to the goodwill of the firm

---

least in part, is gleaned from various portions of the partnership agreement. Section II, entitled "Capital," specifies that no allowance is made in the capital account for the goodwill of the partnership, and notes that "provision therefor is made in the Articles below relating to payments upon the death or retirement of a partner." Although Section XII does not expressly provide for goodwill payments, it entitles a retiring partner to receive, in addition to the return of his capital account, a set weekly payment lasting for a set number of years. In contrast, Section IX states that, following withdrawal, the withdrawing partner shall be entitled to the return of his capital account "without any allowance for goodwill of the partnership."

**3.** We do not suggest that it would be either illegal or unethical for the partnership agreement

to restrict Lavine's right to practice elsewhere after leaving the firm. Indeed, the Rules of Professional Conduct specifically permit law firms to impose such restrictions in connection with agreements concerning retirement benefits. *See* D.C. RULES OF PROFESSIONAL CONDUCT Rule 5.6 ("A lawyer shall not participate in ... [a] partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, *except an agreement concerning benefits upon retirement*") (emphasis added). We note only that, given the general suspicion with which the law views restrictions on competition, the absence of an express anti-competitive provision in the partnership agreement could support a reasonable inference that the parties did not intend such a provision.

**4.** *See supra* note 2 and accompanying text.

existing at their departure, and should be compensated for that contribution in any event when they depart, regardless of their actions after leaving the firm.

Because the partnership agreement is by its terms reasonably susceptible of more than one interpretation,[5] we cannot agree with the trial court's legal conclusion that the agreement is unambiguous. *See Burbridge, supra,* 305 A.2d at 247. Consequently, summary judgment is not appropriate, *see, e.g., Bagley, supra,* 647 A.2d at 1113, and the choice among interpretations is for the factfinder to make, based on the evidence introduced by the parties to support their respective interpretations. *See Howard Univ., supra,* 484 A.2d at 966; *E.A. Baker Co., supra,* 578 A.2d at 708. Here, the factfinder's decision as to which interpretation the parties intended might be informed, for example, by evidence relating to previous versions of the partnership agreement and their source,[6] discussions among the parties about the pertinent provisions, the prior course of dealing between MFL and other partners who left the firm, and discussions or admissions by the parties as to the nature of Lavine's departure from the firm.

Accordingly, the judgment appealed from is vacated and remanded for further proceedings consistent with this opinion.[7]

5. In addition to the parties' two interpretations, we note that there may be at least one other reasonable interpretation of the partnership agreement, falling somewhere between the two extremes advocated by the parties. Such an interpretation might, for example, permit a departing partner who is sixty-five or older to receive retirement benefits and continue to practice law, provided such practice does not directly compete with MFL. Appellants argue that it would be unreasonable to interpret the partnership agreement to require MFL to pay retirement benefits to former partners who compete with the firm and deprive it of its client base. Even if appellants are correct, their argument would not preclude an interpretation of the agreement permitting a retiring partner to receive retirement benefits while engaging in a law practice that did not compete with the firm.

6. Appellants assert that, throughout Lavine's tenure with MFL, a new partnership agreement was executed each time the membership of the firm changed, and that what they consider to be the material terms of the February 1993 agreement were identical to the terms in the previous agreements executed during Lavine's tenure.

7. Appellants assert that Bassam N. Ibrahim and Brian P. O'Shaugnessy, two of the individuals whom Lavine named as defendants, are not partners of MFL, but employees of the firm. Appellants argue that there is a genuine issue of material fact as to those two individuals' status within MFL. In addition, appellants assert that Dale Curtis Hogue, Sr., another individual whom Lavine named as a defendant, did not become a partner of MFL until after Lavine left the firm, and therefore that Hogue's liability to Lavine is limited to the extent of Hogue's partnership interest. The trial court did not address either of these issues. In light of our disposition, we leave these issues to further proceedings on remand.