Nancy B. PARKER and Ellis J. Parker, Appellants,

v.

U.S. TRUST COMPANY, Appellee.

No. 07–CV–850.

District of Columbia Court of Appeals.

Argued May 21, 2009.

Decided Oct. 27, 2011.

---

David J. Kaminow, Rockville, MD, for appellant.

Michael F.X. Dolan, Jr., Chevy Chase, MD, for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and RUIZ, Associate Judge, Retired.*

RUIZ, Associate Judge, Retired:

Appellants, Nancy B. Parker and Ellis J. Parker ("the Parkers"), appeal the trial court's entry of summary judgment in favor of appellee, U.S. Trust Company, N.A. ("U.S. Trust"), holding that the Hartford E. Bealer, Limited Liability Company ("HEB LLC") was terminated in accordance with the terms of its Operating Agreement upon the death of Mr. Bealer. The Parkers argue that the trial judge

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

erred in interpreting the Operating Agreement as constituting them a single member of HEB LLC, with the effect that they could not muster the two votes necessary to continue operating HEB LLC after Mr. Bealer's death, as they wished to do, and that Ms. Parker could not purchase the Estate interest in HEB LLC, as she wished to do. We conclude that the Operating Agreement is ambiguous on the issue of who is a "member," and that there are other material facts in dispute. Summary judgment was therefore inappropriate, and we reverse and remand for further proceedings.

## I.

HEB LLC is a limited liability company created under the laws of the District of Columbia for the purpose of acquiring, holding and disposing of real property. HEB LLC is governed by an Operating Agreement, effective June 24, 1996. The Operating Agreement's signature page contemplated that there would be three members: (1) Hartford E. Bealer, (2) Sally Bealer Kirchiro, and (3) Nancy Bealer Parker. The only parties who signed the agreement, however, were Mr. Bealer and Ms. Parker; Ms. Kirchiro never signed the agreement and it is undisputed that she never became a member. Paragraph 1(b) of the Operating Agreement incorporates Exhibit A which, under the heading "MEMBER," lists Mr. Bealer as owning 33 1/3% of the LLC with a capital contribution of $33.34, and Ms. Parker and Mr. Parker as "Tenants by the Entirety" owning together 33 1/3% of the LLC with a capital contribution of $33.33.[1] The Operating Agreement does not define the term "Member."

Paragraph 15(a)(i) of the Operating Agreement provides that HEB LLC is to dissolve upon the death of a "Member" unless, "within ninety (90) days ... the other Members with voting rights elect to continue the legal existence of [HEB LLC] and [its] business," provided that "[HEB LLC] shall not be continued by fewer than two (2) Members." Mr. Bealer died on January 9, 2003, and U.S. Trust was appointed executor of his estate. The Parkers allege that on January 30, 2003, Ms. Parker executed a hand-written document ("January 30, 2003 Amendment") transferring one-half of her interest in HEB LLC to her husband, and electing to continue HEB LLC.[2]

On October 16, 2003, Ms. Parker's attorney wrote a letter to counsel for U.S. Trust stating that "[Ms.] Parker intends to exercise her rights under the Hartford E. Bealer LLC Operating Agreement to purchase all the LLC interests of Mr. Bealer now owned by his estate." On November 24, 2003, Ms. Parker's attorney wrote to U.S. Trust's attorney confirming that "[o]n October 16, 2003 .... [by letter from her counsel, Ms. Parker] exercised her rights under the [HEB LLC] Operating Agreement ... to purchase all the LLC interests of Mr. Bealer now owned by his estate for the price provided for in [the] Operat-

---

1. The other third interest was not allocated, resulting in two 50–50 shares.

2. The January 30, 2003 Amendment is a hand-written document signed by the Parkers that was attached to their motion for summary judgment. Mr. Parker submitted an affidavit attesting that it is "a true and correct cop[y] of what [it] purports to be and fairly and adequately depict[s] what [it] purport[s] to depict." At a hearing held on the summary judgment motions, Mr. Parker was present and available to answer questions, but he was not asked to testify. Superior Court Civil Rules 43(e) and 56 provide that the court may consider oral testimony or depositions and affidavits in deciding summary judgment. The trial judge never ruled on the Amendment's admissibility.

ing Agreement." Similar letters were sent on July 7, 2004, and May 27, 2005. The last letter complained that "I have written to you on many prior occasions over the last year and one-half about these matters without resolution."

*Trial court proceedings*

On July 14, 2005, the Parkers filed a complaint for breach of contract and specific performance, asking that U.S. Trust be ordered to transfer the deceased Mr. Bealer's interest to Ms. Parker and pay to her the profits corresponding to her interests both before and after his death.[3] The Parkers filed a motion for partial summary judgment, which sought a declaratory judgment establishing that they owned 50% of the outstanding interest in HEB LLC because Exhibit "A" to the Operating Agreement proved that Mr. Bealer owned 50% of the outstanding interest and Nancy Parker and Ellis Parker owned the other 50% of the outstanding interest as tenants by the entireties. U.S. Trust opposed the Parkers' motion and filed its own cross-motion for summary judgment arguing that HEB LLC had terminated upon the death of Mr. Bealer. The trial court denied the Parkers' motion for partial summary judgment and granted U.S. Trust's cross-motion for summary judgment. The trial court ruled that to the extent that Mr. Parker had any membership interest in HEB LLC as of the date of Mr. Bealer's death, it was only through his and Ms. Parker's joint interest as tenants by the entireties and that, therefore, the Parkers constituted only one member of HEB LLC. The trial court thus found that the Parkers could not elect to continue the operations of HEB LLC because the Operating Agreement required at least two members to make that election. The Par-

kers filed a Rule 59(e) motion to reconsider, which was denied. This appeal followed.

## II.

 "This court reviews the grant of a motion for summary judgment *de novo*, applying the same standard as that utilized by the trial court." *Hollins v. Fed. National Mortgage Ass'n*, 760 A.2d 563, 570 (D.C.2000). "A motion for summary judgment should be granted whenever the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C.2002). We view the evidence "in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in that party's favor." *Woodland v. District Council 20*, 777 A.2d 795, 798 (D.C.2001).

 Where a contract is unambiguous on its face, summary judgment is appropriate. *See Bagley v. Found. for Pres. of Historic Georgetown*, 647 A.2d 1110, 1113 (D.C.1994) (citing *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). In cases where contract language is ambiguous, however, a genuine dispute of material fact as to the meaning of the contractual terms will preclude summary judgment. *See Nat'l Trade Prods. v. Info. Dev. Corp.*, 728 A.2d 106, 109 (D.C.1999). "A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation." *Gryce v. Lavine*, 675 A.2d 67, 69 (D.C.1996) (citing *Holland*, 456 A.2d at 815). Rather, a contract is ambiguous "when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions

---

**3.** On September 12, 2005, Ms. Parker filed an Amended Complaint in order to add Mr. Par- ker as a party-plaintiff to this action.

or interpretations, or of two or more different meanings." *Holland,* 456 A.2d at 815 (quoting *Burbridge v. Howard Univ.,* 305 A.2d 245, 247 (D.C.1973)). Therefore, a contract is ambiguous "[i]f there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making...." *Gryce,* 675 A.2d at 69 (citing *Morgan v. Am. Univ.,* 534 A.2d 323, 330 (D.C.1987)). Whether a contract is ambiguous is a question of law. *Bagley,* 647 A.2d at 1113. (citing *Holland,* 456 A.2d at 815). Once the court determines that a contract is ambiguous, "[t]he choice among reasonable interpretations ... is for the factfinder to make, based on the evidence presented by the parties to support their respective interpretations." *Gryce,* 675 A.2d at 69 (citing *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984); *E.A. Baker Co. v. Haft,* 578 A.2d 706, 708 (D.C.1990)).

### The Parkers' interpretation

■ The Parkers argue that each one of them is a separate member of HEB LLC even though their ownership interest was held as tenants by the entireties at the time of Mr. Bealer's death, and that therefore they could elect to continue HEB LLC pursuant to Section 15(a)(i) of the Operating Agreement. They argue that because the Operating Agreement does not define the term "member" and because HEB LLC was created pursuant to the laws of the District of Columbia, the statutory definition of "member" at the time the agreement was entered into should be controlling. At the time, D.C.Code § 29–1301(19) (1981) defined "member" as "a person that owns an interest in a limited liability company," and § 29–1301(20) defined "interest" as "a member's share of the profits and losses of the limited liability company and a member's right to receive distributions of the limited liability company." [4] Combining these definitions, appellants contend that a person who has a right to a share in the profits and losses of the LLC and has a right to receive distributions of the LLC's assets has an "interest" and therefore is a "member." Because as tenants by the entireties, each of them has a right to share in the profits and losses of the jointly owned property, each has an "interest" and therefore meets the statutory definition of "member."

We conclude that the Parkers' interpretation of the Operating Agreement, in light of the statutory definitions, is reasonable. Who is a member is not clear from the face of the Operating Agreement. For example, although Ms. Kirchiro is listed as a member, she did not sign the Agreement and the parties agree she was never a member.[5] On the other hand, although Mr. Parker's name does not appear on the signature block of the Operating Agreement, and he did not sign it, his name appears under the designation "Members" in Exhibit A to the Agreement. The critical provision for purposes of the Parkers' complaint is Paragraph 15(a)(i) of the Operating Agreement, which provides that "[HEB LLC] shall not be continued by fewer than two (2) Members." But, al-

4. Appellant's brief incorrectly cites to D.C.Code § 29–1001, and does not refer to an edition of the D.C.Code. The substantive definitions they quote, however, appear in § 29–1301 of the 1981 edition. That is the version that was in existence when the Operating Agreement was signed, and that is referred to in the Operating Agreement. See note 6, *infra.* These provisions have been superseded by the "Uniform Limited Liability Company Act of 2010." *See* D.C.Code § 29–801.01 *et seq.* (2001).

5. Exhibit A lists Ms. Kirchiro's name but does not show that she has a percentage interest, or that she made a capital contribution.

though the Agreement repeatedly uses the term "Member" with a capital "M"—usually signifying a defined term—nowhere in the Operating Agreement or in Exhibit A is the term "Member" defined.[6] Under these circumstances, we think that the Parkers' argument that because HEB LLC was created under the laws of the District of Columbia, and the Operating Agreement states in Paragraph 16 that its provisions are to be "governed by, interpreted and enforced" in accordance with the laws of the District of Columbia, undefined terms should be given the definition in the D.C. statute extant at the time has some force and is, at a minimum, reasonable.[7] *Cf. 2200 M St. LLC v. Mackell,* 940 A.2d 143, 153 (D.C.2007) (concluding that because a contract provided that it would adopt the definition of terms in the Condominium Act, it should be interpreted in accordance with that Act).[8]

 Moreover, as the Parkers argue, tenants by the entireties have the right to share in the profit and losses of the property that is jointly owned. *See Morrison v. Potter,* 764 A.2d 234, 236–37 (D.C.2000) (noting that property held by tenants by the entireties is "unreachable by creditors of one but not of both of the tenants");

*Finley v. Thomas,* 691 A.2d 1163, 1164 (D.C.1997) (holding that because proceeds were from the sale of property held by the husband and wife as tenants by the entireties, a creditor could not collect a debt owed only by the husband from the proceeds); *Fairclaw v. Forrest,* 76 U.S.App. D.C. 197, 201, 130 F.2d 829, 833 (1942) (explaining that when a husband and wife own property as tenants by the entireties, the husband cannot assert an exclusive right to the rents and profits); *Arbesman v. Winer,* 298 Md. 282, 468 A.2d 633, 637 (1983) (explaining that when a husband and wife own property as tenants by the entireties, each spouse has an equal right to profits derived from the property). Thus, the Parkers' contention that each is a member of HEB LLC has grounding in D.C. statutory and common law.

### The Estate's interpretation

We must next consider whether U.S. Trust's interpretation of the Operating Agreement, on behalf of Mr. Bealer's Estate, is also reasonable. *See Gryce,* 675 A.2d at 69 (explaining that court must inquire whether both parties' interpretations of the contract are reasonable). The

---

**6.** The Operating Agreement defines a number of terms in Paragraph 1 ("Definitions"). However, that section jumps from subparagraph (n) at the bottom of p. 3 (defining "manager") to subparagraph (q) at the top of p. 4 (defining "organizer"). The definition of "member"—if one was intended—would have fallen in the missing subparagraph (o) or (p). No testimony or documentary evidence was presented that shed light on the parties' intent regarding the definition of "member" or the skipped subparagraphs.

**7.** The second paragraph of the Operating Agreement's preamble reads "WHEREAS, the parties hereto desire to join together in a limited liability company for the purposes set forth in paragraph 4 hereof, pursuant to the District of Columbia Limited Liability Company Act[ ] of 1994 (§§ 29–1301 *et. seq.* of the

code of the District of Columbia (1981))." Paragraph 16(d) states, "[t]his agreement and the rights of the parties hereunder will be governed by, interpreted and enforced in accordance with the laws of the District of Columbia[.]"

**8.** Unlike in this case, the disputed contract in *Mackell,* 940 A.2d at 153, specified that "terms not defined herein shall have the meanings specified for such terms in Section 45–1802 of the Condominium Act." Here, the Operating Agreement did not specify that undefined terms would be defined as provided for in the statute, but referred generally to "the laws of the District of Columbia." D.C.Code § 29–1001 is the only D.C. statutory provision applicable to HEB LLC in this regard.

Operating Agreement provides, "[u]nless named in this Agreement or otherwise admitted to the Company in accordance with the terms of the Agreement, no person or entity shall be considered a Member." (Paragraph 12(c)). U.S. Trust argues that Mr. Parker is not a member of HEB LLC because he is not listed on the signature page of the Operating Agreement and did not sign it. Because Mr. Parker's name appears in Exhibit A of the Operating Agreement only in connection with his joint ownership, as "Tenant by the Entirety," of the one-third interest held by his wife, U.S. Trust relies on the well-established principle that tenants by the entireties own a unitary interest in the whole property, to argue that each spouse should not be considered as having a separate interest in the company, with independent membership status. It argues that the Parkers, therefore, jointly constituted one "Member" and could not elect to continue operation of HEB LLC after Mr. Bealer's death because Section 15(a)(i) of the Operating Agreement requires that at least two members make that election. In addition to making this legal argument, U.S. Trust produced an affidavit signed by Mr. Bealer, dated April 25, 2000, which lists only Mr. Bealer and Ms. Parker as Members. As U.S. Trust correctly argues, the cases cited by the Parkers—*Fairclaw* and *Arbesman*—hold that tenants by the entireties share the same interest in the owned property and that their interests are equal and indivisible. *See Fairclaw,* 76 U.S.App.D.C. at 201, 130 F.2d at 833 (noting that "each is entitled to the enjoyment and benefits of the whole and neither has a separate estate therein which may

be subjected to a conveyance or execution"); *Arbesman,* 468 A.2d at 637 (referring to "a 'team theory' approach to the tenancy by the entireties estate"). Appellee's argument that the Parkers' interest should be understood in this manner, as constituting a single Member, is, we conclude, also reasonable.

The unique characteristic of a tenancy by the entireties as matter of property law, however, does not necessarily resolve the question before the court: who is to be considered a "member" under the terms of the Operating Agreement. That issue is to be determined not by any individual party's subjective intent but, at least initially, from an objective reading of the Agreement itself. But where the operative term "Member" is not defined in the Agreement, and in addition there is an inconsistency between the members listed on the signature page and those listed in an exhibit that is incorporated into the Agreement, as here, the interpretive question necessarily requires reference to extrinsic criteria. In this case, those include the statutory definition of "member" that appellants claim would lead to the Parkers being considered two members, and the common law understanding that tenants by the entireties are for most purposes considered a unit. U.S. Trust does not argue against reading the term "Member" used in the Agreement in light of the statutory definitions of "member" and "interest"; rather, it disputes that the undivided nature of Mr. Parker's interest in the company would entitle him to be considered a member.[9] The Parkers, for their part, do not dispute that property held as a tenancy by the entireties is indivisible,

---

9. U.S. Trust cites no statutory provision in support of its interpretation that as a matter of corporate law, the interests of tenants by the entireties in a limited liability corporation should be considered as one. *Cf.* D.C.Code § 29–101.156 (providing with respect to close corporations that "[f]or purposes of determining the number of holders of record of the stock of a close corporation, stock which is held in joint or common tenancy or by the entirety shall be treated as held by 1 shareholder").

but they argue that the manner in which property is held by spouses as tenants by the entireties and the interest each individual spouse has in that jointly held property are different concepts, and it is the latter that is relevant to the definition of "Member." As we consider that both interpretations are reasonable, we conclude that the Operating Agreement is ambiguous, *see Holland,* 456 A.2d at 815, and remand the case so the issue whether Mr. Parker was a member at the time of Mr. Bealer's death can be submitted to the factfinder to determine, based on all the evidence, which interpretation is correct in light of the Agreement's language, structure and purpose. *See Gryce,* 675 A.2d at 67.

### III.

The Parkers further argued that shortly after Mr. Bealer's death the January 30, 2003 Amendment transferred half of Ms. Parker's interest to Mr. Parker and made a timely and valid election to continue HEB LLC. The trial court determined that the Parkers constituted a single member of HEB LLC as tenants by the entireties as of the time of Mr. Bealer's death and, as such, could not continue operations under Paragraph 15(a)(i). The trial court's determination was limited to Mr. Parker's status as a member as of the time of Mr. Bealer's death, and it did not rule on the admissibility of the subsequent January 30, 2003 Amendment. The Parkers argued, however, that because the Operating Agreement provides a 90–day period following the death of a member during which remaining members can elect to continue operations, Mr. Parker could have become a Member during that period. The trial court did not directly address this question. The authenticity and legal effect of the January 30, 2003 Amendment is therefore relevant to two issues. Should there be a finding on remand that the Parkers together should be considered a single Member under the Operating Agreement as of the time of Mr. Bealer's death, the authenticity and admissibility of the January 30, 2003 Amendment will become relevant to appellants' alternative argument that the Amendment effectively transferred half of Ms. Parker's interest to her husband. Paragraph 12(a) of the Operating Agreement provides for transfers of interests and admission of new Members. If the transfer was effective to dissolve the tenancy by the entireties in the Parkers' jointly owned half interest in the company, then there would have been two Members of the Company as of January 30, 2003—well within 90 days of Mr. Bealer's death earlier that month. Similarly, the Amendment will be relevant to whether the Parkers (if considered separate Members), validly elected to continue operations pursuant to Paragraph 15(a)(i) of the Operating Agreement.

### IV.

Because the term "Member" is not defined in the Operating Agreement, its definition is susceptible to either U.S. Trust's or the Parkers' interpretation. Because both are reasonable interpretations, we conclude that the Operating Agreement is ambiguous and gives rise to a genuine issue of material fact which must be resolved at trial by the factfinder. *See Gryce,* 675 A.2d at 69 ("The choice among reasonable interpretations of an ambiguous contract is for the factfinder to make, based on the evidence presented by the parties to support their respective interpretations."). Thus, the trial judge erred in granting U.S. Trust's motion for summary judgment. On remand, both parties should be provided an opportunity to provide evidence to the factfinder to determine who is a "Member" under the Agreement, *see id.,* and further, whether a valid transfer of one half of Ms. Parker's inter-

est to her husband and an election to continue operations were effected by the January 30, 2003 Amendment.

For the foregoing reasons, the judgment of the trial court is

*Reversed and Remanded.*