*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-PR-1006

JOHN MAZOR, ET AL., APPELLANTS,

v.

ELIZABETH FARRELL, APPELLEE.

FILED **6/21/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(LIT-19-12)

(Hon. Gerald I. Fisher, Trial Judge)

(Argued December 7, 2017                    Decided June 21, 2018)

*Daniel Morris*, with whom *David I. Ackerman* was on the brief, for appellants.

*William E. Davis* for appellee.

Before GLICKMAN, FISHER, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellants John and William Mazor ("the Mazor brothers") sued their father Julian Mazor ("Mr. Mazor") and their father's second wife, appellee Elizabeth Farrell, to recover funds misappropriated from the estate of their grandmother Esther Mazor. The trial court found Ms. Farrell liable to the Mazor brothers for unjust enrichment of over $300,000. In the present

appeal, the Mazor brothers challenge the trial court's decision that they were not entitled to prejudgment interest on that award under D.C. Code § 15-108 (2012 Repl.) (in action to recover "liquidated debt on which interest is payable by contract or by law or usage," judgment shall include award of prejudgment interest). We affirm.

## I.

The following facts either are undisputed or were found by the trial court. Ms. Mazor died in 1993. Mr. Mazor was a co-trustee of two trusts (Trust A and Trust B) to be funded equally from Ms. Mazor's residuary estate, valued at over $3 million. Trust B was established for the benefit of the Mazor brothers and Trust A would benefit Mr. Mazor during his lifetime with any remainder going to Trust B.

Neither trust was initially funded. Instead, funds from the estate were placed into an account owned and controlled by Mr. Mazor. Mr. Mazor used the funds for himself and Ms. Farrell, without regard to whether the funds belonged to Trust A or Trust B.

The Mazor brothers eventually sued Mr. Mazor and Ms. Farrell to recover funds misappropriated from the estate. Mr. Mazor defaulted on the Mazor brothers' claims against him, but Ms. Farrell contested her liability.

Mr. Mazor and Ms. Farrell were married in 1999. By marrying Mr. Mazor, Ms. Farrell forfeited alimony payments she had been receiving from her previous marriage. Until the Mazor brothers filed suit, Ms. Farrell did not suspect, and had no reason to suspect, that Mr. Mazor had misappropriated estate funds to support their marriage.

Ms. Farrell benefited from Mr. Mazor's misuse of estate funds in several ways. She drew from accounts containing funds traceable to estate funds for daily household and living expenses throughout the marriage. In 1999, the couple used approximately $1 million traceable to estate funds to purchase and improve a house in Washington, D.C. In 2005, Mr. Mazor provided $330,000 to Ms. Farrell for the down payment on a house in Cape Cod, Massachusetts, $234,000 of which was traced to estate funds. Mr. Mazor also provided Ms. Farrell with approximately $86,000 traced to estate funds to cover mortgage payments for the Cape Cod house.

The Mazor brothers sued Ms. Farrell for unjust enrichment, seeking among other things repayment of funds traceable to the estate, title to and rents from the Cape Cod house, and prejudgment interest. The trial court granted summary judgment on the issue of liability, concluding that it was undisputed that Ms. Farrell benefited from funds misappropriated from the estate. The trial court declined, however, to award damages on summary judgment, instead setting that issue for trial.

After trial, the trial court awarded only part of the requested relief. First, the trial court determined that the Mazor brothers were not entitled to repayment of the funds used for the purchase and improvement of the D.C. home, because those funds did not exceed the more than $1 million that should have been deposited for Mr. Mazor in Trust A. The trial court also did not require Ms. Farrell to compensate the Mazor brothers for most of the funds Ms. Farrell used to cover household and daily living expenses. Relying on the Restatement (Third) of Restitution and Unjust Enrichment (Am. Law Inst. 2011), the trial court found that Ms. Farrell was an innocent recipient of those funds because there was no evidence that she knew that Mr. Mazor had misappropriated those funds from the estate.

The trial court concluded that it would be inequitable to require Ms. Farrell to compensate the Mazor brothers for funds she innocently received in exchange for her role in supporting the marriage, particularly given that Ms. Farrell forfeited alimony payments from her previous marriage. (The trial court did find Ms. Farrell liable as to $21,500 she used after the Mazor brothers filed suit, because she was not an innocent recipient of those funds, but that amount is not at issue on this appeal.)

As to the Cape Cod house, the trial court concluded that Ms. Farrell was liable for the misappropriated estate funds that went to her down payment and mortgage payments, because the circumstances did not justify her retention of those funds. The trial court ordered Ms. Farrell to compensate the Mazor brothers for the funds that could be traced to the estate, amounting to approximately $320,000. On the other hand, the trial court concluded that Ms. Farrell's status as an innocent recipient shielded her from being required to relinquish any "consequential gains" such as the rents she received or appreciation on the house.

The Mazor brothers appealed, arguing among other things that the trial court did not address whether they were entitled to prejudgment interest under both D.C.

Code § 15-108 and the common law. *Mazor v. Mazor*, Nos. 15-PR-105 & 15-PR-121, Mem. Op. & J. at 3 (Feb. 18, 2016). We agreed and remanded for the trial court to address the Mazor brothers' claim for prejudgment interest. *Id.*

On remand, the trial court denied prejudgment interest under § 15-108, concluding that the Mazor brothers' unjust-enrichment claim against Ms. Farrell was not an action to recover a liquidated debt. The trial court did not address whether the Mazor brothers were entitled to prejudgment interest under the common law, but the Mazor brothers do not press that issue on appeal and we therefore do not address the issue.

**II.**

For the Mazor brothers to be entitled to prejudgment interest under § 15-108, their unjust-enrichment claim against Ms. Farrell must have been an action "to recover a liquidated debt." The parties agree that we review de novo the trial court's conclusion that the Mazor brothers' unjust-enrichment claim was not an action to recover a liquidated debt. Assuming without deciding that our review is de novo, we affirm.

Prejudgment interest operates in part to compensate prevailing plaintiffs for the loss of the use of money that was wrongfully withheld by the defendant. *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 732 (D.C. 2003). "Statutes providing for prejudgment interest are thus remedial and should be generously construed so that the wronged party can be made whole." *Id.* (internal quotation marks omitted). Section 15-108 does not provide for an award of prejudgment interest in every case, however. Rather, an award of prejudgment interest is authorized under § 15-108 only if certain statutory requirements are present. At issue in this appeal is the requirement that the action must be to recover a liquidated debt. "A liquidated debt is one which at the time it arose was an easily ascertainable sum certain." *Steuart Inv. Co. v. The Meyer Grp.*, 61 A.3d 1227, 1240 (D.C. 2013) (internal quotation marks and ellipsis omitted).

The traditional rationale for requiring a liquidated debt was that "while a person who failed to pay a debt which was fixed and certain was considered a wrongdoer subject to penalty, it was deemed unfair to penalize one who failed to tender payment when he could not know the amount of the debt." *District of Columbia v. Pierce Assocs.*, 527 A.2d 306, 310-11 (D.C. 1987). Prejudgment interest is not simply a penalty, though; it also serves to compensate the plaintiff "for loss of the use of its money." *District of Columbia v. Potomac Elec. Power*

*Co.*, 402 A.2d 430, 441 (D.C. 1979). More recently, the rationale for providing prejudgment interest has focused less on the wrongdoing of the defendant and more on making the plaintiff whole. *Pierce*, 527 A.2d at 306; *Potomac Elec. Power Co.*, 402 A.2d at 441. D.C. Code § 15-109 (2012 Repl.), which provides discretionary authority to award prejudgment interest as part of damages, reflects the more recent rationale. *Pierce*, 527 A.2d at 311. Section 15-108, rather than § 15-109, is at issue in this appeal, and the former provision requires that the amount a plaintiff seeks to recover be liquidated, i.e., an easily ascertainable sum certain at the time it arose. For several reasons, we conclude that the debt in this case was not easily ascertainable at the time that it arose.

First, Ms. Farrell's debt rests on a determination that Ms. Farrell had been unjustly enriched.

> The doctrine of unjust enrichment applies when a person retains a benefit (usually money) which in justice and equity belongs to another. The recipient of such a benefit has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for the recipient to retain it. The elements of an unjust enrichment claim are (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.

*Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (brackets, citations, and internal quotation marks omitted). Thus, whether Ms. Farrell owed a debt at all, and if so the amount of that debt, turned on an assessment of what was just under all of the circumstances. Where the existence and amount of a debt turns on such an assessment, the amount of the debt seems far more likely to be "the subject of controversy and proof at trial," *Schwartz v. Swartz*, 723 A.2d 841, 844 (D.C. 1998) (internal quotation marks omitted), than to be an "easily ascertainable sum certain," *Steuart*, 61 A.3d at 1239 (internal quotation marks omitted). *See Aon Risk Servs., Inc. of Wash., D.C. v. Estate of Coyne*, 915 A.2d 370, 380 (D.C. 2007) ("[D]amages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.") (internal quotation marks omitted).

We have addressed a similar issue when considering whether debts resting on a claim of quantum meruit are liquidated. In that context, we have concluded in categorical terms that debts resting on quantum meruit "are by their very nature unliquidated." *Schwartz*, 723 A.2d at 844 (internal quotation marks omitted). That conclusion is quite instructive, because we have noted the close relationship between quantum meruit and unjust enrichment. *See, e.g.*, *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005) ("[T]he essence of a *quantum*

*meruit* claim is not the plaintiff's expectancy of payment, but the unjust enrichment of the defendant . . . .") (ellipses and internal quotation marks omitted); *Vereen v. Clayborne*, 623 A.2d 1190, 1194 (D.C. 1993) ("This particular quantum meruit analysis is more commonly known as a theory of unjust enrichment."). We are aware of no case, from this court or any other, that has found a claim sounding in unjust enrichment to be a liquidated debt for purposes of determining whether to award prejudgment interest. Nevertheless, we need not decide in this case whether claims based on unjust enrichment can ever involve liquidated debts. Rather, we conclude more narrowly that unjust-enrichment claims, by their nature, will often involve unliquidated debts rather than liquidated debts.

Second, the trial court determined that Ms. Farrell was an innocent recipient of the funds currently at issue. The Mazor brothers do not challenge that determination in this appeal. It can be particularly complicated to determine whether, and if so to what extent, an innocent recipient of funds belonging to someone else is liable in unjust enrichment. For example, requiring an innocent party to return funds may be inequitable if the innocent recipient has reasonably relied upon receipt of the funds. *See, e.g.*, *Marsden v. District of Columbia*, 142 A.3d 525, 528 (D.C. 2016) ("[R]equiring repayment may be inequitable where [an] innocent recipient relied on [a] benefit to make expenditures that [the] recipient

would not otherwise have made.") (citing 2 Restatement (Third) of Restitution and Unjust Enrichment § 65 & cmt. c). Moreover, it may be unjust to require repayment that would leave an innocent recipient "worse off . . . than if the transaction giving rise to liability had not occurred." 2 Restatement (Third) of Restitution and Unjust Enrichment § 50(3); *see id.* § 53, cmt. c, ill. 5 (innocent recipient of $10,000 in fluctuating stocks who eventually sells at loss for $5,000 is not liable to claimant for full amount). In other words, the amount, if any, of an innocent recipient's liability in unjust enrichment can fluctuate over time depending on circumstances that arise after the recipient obtained the funds at issue. Such complexities cut strongly against a conclusion that an innocent recipient's liability in unjust enrichment can reasonably be viewed as "an easily ascertainable sum certain" "at the time it arose." *Steuart*, 61 A.3d at 1240. (Although we have no occasion to delve into the issue in the present case, we note that it also can be difficult to ascertain when a claim for unjust enrichment arises in cases involving an innocent recipient. *Cf. Boyd v. Kilpatrick Townsend & Stockton*, 164 A.3d 72, 79-80 (D.C. 2017) (accrual of unjust-enrichment claim requires that payment "has been wrongfully withheld," which can turn on whether and when payment was demanded) (internal quotation marks omitted).)

Third, the amount the Mazor brothers sought from Ms. Farrell relating to the Cape Cod house varied significantly over the course of the litigation. In the complaint, the Mazor brothers alleged that "much" of "at least $330,000" for the down payment of the Cape Cod house, in addition to unquantified monthly mortgage payments, came from estate funds. The Mazor brothers' claim as to the Cape Cod house rose to $500,000 at the damages trial, although they provided specific support only for $415,935.43: $330,000 for money that went to the down payment, of which only $234,000 was traceable to estate funds, and $85,935.43 in mortgage payments. We have said that the fluctuating value claimed by a plaintiff throughout the course of litigation is "evidence that the sum was not easily ascertainable." *Steuart*, 61 A.3d at 1240 n.15; *see District of Columbia v. Campbell*, 580 A.2d 1295, 1300-01 (D.C. 1990) ("Such fluctuation in itself likely would be sufficient grounds for us to conclude that the damages [the plaintiff] claimed were unliquidated.").

Taken together, these considerations convince us that the trial court correctly concluded that the Mazor brothers' action was not an action to recover a liquidated debt. *Cf., e.g.*, *Aon*, 915 A.2d at 379-80 (breach-of-contract and professional-negligence claims unliquidated, where dispute about proper assessment of damages created "at least a reasonable controversy" as to amount of defendant's liability);

*Schwartz*, 723 A.2d at 842-44 (claims of quantum meruit, unjust enrichment, and breach of contract unliquidated, where retainer agreement did not specify definite sum for legal services). Because the considerations we have already discussed suffice to convince us, we need not and do not address the parties' dispute as to whether the debt was unliquidated because it was difficult to determine to what extent the funds Mr. Mazor provided to Ms. Farrell in connection with the Cape Cod house were properly traceable to misappropriated funds.

We are not persuaded by the Mazor brothers' arguments in support of the contention that Ms. Farrell's debt was liquidated. First, although the Mazor brothers correctly point out that there was no dispute that Mr. Mazor was the source of money that Ms. Farrell used to buy the Cape Cod house, that fact was by itself not sufficient to establish Ms. Farrell's liability, much less to permit ready ascertainment of the amount of that liability. Rather, the amount of Ms. Farrell's liability could not be ascertained without determining whether and to what extent, under all of the circumstances, it would be just to require Ms. Farrell to repay the Mazor brothers.

Second, the Mazor brothers argue that partial prejudgment interest can be appropriate if a portion of the debt was liquidated. Our case law on that point is

not entirely clear. *Compare Steuart*, 61 A.3d at 1240 n.16 (not reaching issue under § 15-108), *with Burke v. Groover, Christie & Merritt, P.C.*, 26 A.3d 292, 306 & n.13 (D.C. 2011) (In context of court's equitable power to award prejudgment interest, court states, "That the total amount of the interest award is disputed does not affect the liquidated nature of that part of the interest award the debtor concedes is valid.") (internal quotation marks omitted). Assuming that the Mazor brothers are correct on this point, we do not see any discrete portion of the debt at issue that should be viewed as liquidated.

Third, this case is not comparable to the cases upon which the Mazor brothers primarily rely, because (a) those cases did not involve claims comparable to unjust enrichment and (b) in all of those cases the precise amount of damages was far more clearly fixed. *Wash. Inv. Partners of Del. v. Sec. House, K.S.C.C.*, 28 A.3d 566, 581-82 (D.C. 2011) (holding that breach-of-contract damages were liquidated debt; "Both parties knew exactly how much WIP had been paid under the AMA, and thus appellee's award was a sum certain.") (internal quotation marks omitted); *In re Estate of Green*, 912 A.2d 1198, 1212 (D.C. 2006) (holding that breach-of-fiduciary-duty damages were liquidated debt; defendant stipulated that he took specific amount of money from estate without court approval); *Dist. Cablevision*, 828 A.2d at 732 (holding that damages for violation of District of

Columbia Consumer Protection Procedures Act were liquidated debt; cable provider was liable for "full . . . amount of the void $5.00 late fees" charged to customers); *Pierce*, 527 A.2d at 311 (holding that breach-of-contract damages were liquidated debt; "[T]he District disputed neither the amount of the debt nor the fact that it was required to pay it.").

Fourth, the Mazor brothers rely on the statement in some of our cases that "[e]ven where a bona fide dispute exists as to a debt, courts generally find the liquidated nature of the debt unaffected." *Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1302 (D.C. 1979). That language, however, simply reflects the established principle that a debt can be liquidated even if there is a dispute as to liability, as long as the amount of any liability is easily ascertainable. *Compare Pierce*, 527 A.2d at 311 (debt liquidated where amount owed was not in dispute and only dispute was when debt was due), *with Aon*, 915 A.2d at 380 (debt unliquidated even though plaintiff recovered full amount of claim because defendant's "asserted defense and testimony created at least a reasonable controversy as to the amount for which [defendant] would be liable if [plaintiff] prevailed"). For the reasons we have explained, we conclude that the amount of the debt in this case was not easily ascertainable at the time it arose.

Finally, the Mazor brothers argue that denying prejudgment interest in this case will encourage defendants to dispute obvious claims and to commingle funds in order to avoid prejudgment interest. We do not believe that our holding that prejudgment interest is not available in this case under § 15-108 will have the sweeping consequences the Mazor brothers suggest. Importantly, trial courts have discretion to award prejudgment interest under the common law, "even in the absence of a statutory authorization to that effect." *Burke*, 26 A.3d at 306; *see* 2 Restatement (Third) of Restitution and Unjust Enrichment, § 53(4) & cmt. e (in some circumstances, it may be appropriate to award prejudgment interest as element of unjust enrichment). Moreover, § 15-109 provides statutory authority to include "interest as an element in the damages awarded, if necessary to fully compensate the plaintiff." The Mazor brothers have relied exclusively in this appeal on § 15-108, and we thus have no occasion to address whether prejudgment interest might have been warranted in this case on any other basis.

For the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*