*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-CV-1349 and 19-CV-1225

NANCY B. PARKER and ELLIS J. PARKER, APPELLANTS/CROSS-APPELLEES,

v.

U.S. TRUST COMPANY, N.A., and BANK OF AMERICA, N.A.,
APPELLEES/CROSS-APPELLANTS.

Appeals from the Superior Court
of the District of Columbia
(CAB-5433-05)

(Hon. John M. Mott, Motions Judge)
(Hon. Michael L. Rankin, Trial Judge)

(Argued June 18, 2020                    Decided September 3, 2020)

*William J. Cornwell*, with whom *David J. Kaminow* was on the brief, for appellants/cross-appellees.

*Robert E. Grant*, with whom *James P. Lillis* was on the brief, for appellees/cross-appellants.

Before BLACKBURNE-RIGSBY, *Chief Judge,* and MCLEESE and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellants/cross-appellees Nancy B. Parker and Ellis J. Parker jointly had an interest in a limited liability company (LLC), along with Ms. Parker's father, Hartford E. Bealer. *Parker v. U.S. Trust Co.*, 30 A.3d 147,

149 (D.C. 2011). After Mr. Bealer's death, appellee/cross-appellant U.S. Trust Company, N.A., became a representative of Mr. Bealer's estate. *Id.* Appellee/cross-appellant Bank of America, N.A., subsequently merged with U.S. Trust, and we use "the bank" in this opinion to refer to U.S. Trust and/or Bank of America. The Parkers sued the bank, challenging various actions the bank took while acting as Mr. Bealer's representative. *Id.* at 150. The trial court initially granted summary judgment to the bank, but this court reversed and remanded. *Id.* at 148-55. On remand, a jury awarded the Parkers more than $1 million in damages relating to the bank's failure to distribute income from the LLC to the Parkers. The bank challenges that verdict, arguing that it is entitled to judgment as a matter of law. The Parkers defend the jury award but seek both additional damages and an award of prejudgment interest. We affirm the jury award, vacate the judgment in part, and remand for further proceedings.

## I. Facts and Procedural Background

The following description of the facts and relevant proceedings borrows substantially from our previous opinion in this case. Except as indicated, the facts appear to be undisputed.

The LLC's operating agreement contemplates that there would be three members, Mr. Bealer and his two daughters, each with a one-third interest in the LLC. Mr. Bealer's other daughter never became a member, however, and only Ms. Parker and Mr. Bealer executed the agreement as members. The agreement lists Mr. Bealer as owning a one-third interest and the Parkers as owning a one-third interest together, as tenants by entirety. Because the remaining one-third interest was not explicitly allocated, the agreement resulted in two half interests, one held by Mr. Bealer and the other held jointly by the Parkers. *Parker*, 30 A.3d at 149 n.1

The agreement does not define the term "Member," but it includes various provisions relating to membership. Paragraph 12(c) provides that no person or entity may be considered a member unless named in the agreement or admitted to the LLC in accordance with the terms of the agreement. Paragraph 12(c) further explains that "[t]he Company [and] each Member . . . need deal only with Members so named or so admitted; they shall not be required to deal with any other person or entity by reason of . . . the death or termination of a Member, except as otherwise provided in [the] Agreement."

The agreement also contains provisions relating to the death or withdrawal of a member. In Paragraph 15(a)(i), the agreement requires the LLC to dissolve upon

the death of a "Member," unless "within ninety (90) days . . . the other Members with voting rights elect to continue the legal existence of the Company," provided that the "Company shall not be continued by fewer than two (2) Members." If the members elect to continue the LLC after the death of a member, then "the estate or other legal representative of the [deceased] shall have the obligation to transfer the Interest of the [deceased Member] to the Members who have elected to continue the Company." The remaining members are required to pay an agreed-upon price for the deceased member's interest. Under the terms of the operating agreement, that price is one third of the LLC's assessed value minus ten percent.

Mr. Bealer died in January 2003, having designated the bank as the executor of his estate. *Parker*, 30 A.3d at 149. According to the Parkers, Ms. Parker then transferred half of her interest in the LLC to Mr. Parker, Mr. Parker became a member of the LLC, and the two elected to continue the LLC. Ms. Parker's attorney later sent letters to the bank seeking to exercise a claimed right to purchase Mr. Bealer's interest in the LLC, but the bank did not sell Mr. Bealer's interest. *Parker*, 30 A.3d at 149-50.

In 2005, the Parkers brought a breach-of-contract action in Superior Court, seeking to compel the bank (1) to transfer Mr. Bealer's interest in the LLC to the

Parkers, and (2) to pay the Parkers their share of income the LLC had generated. *Parker*, 30 A.3d at 150 & n.3. The trial court granted summary judgment to the bank in 2007, ruling that the LLC had terminated upon Mr. Bealer's death. *Id.* at 150. The trial court further stated that the LLC "is dissolved and shall be terminated in accordance with paragraph 15 of the company's Operating Agreement."

On appeal, this court reversed. *Parker*, 30 A.3d at 150-55. We held that the agreement is ambiguous on two issues: (1) whether Mr. Parker was a member of the LLC before Mr. Bealer's death, *id.* at 151-54; and (2) whether, in the alternative, Mr. Parker could be added as a member during the ninety-day period after Mr. Bealer's death, so as to permit the Parkers to validly elect to continue the LLC, *id.* at 154-55. We therefore remanded the case for the parties to present evidence to a factfinder on those issues. *Id.*

During the pendency of the appeal, the bank -- presumably relying on the trial court's order granting summary judgment -- filed documents dissolving the LLC and transferring properties out of the LLC to itself as a trustee, for no consideration. In those documents, the bank described itself as the managing member of the LLC. The Parkers filed another suit (CA-559-11) challenging the bank's actions. The trial court dismissed that case without prejudice, concluding that the issues presented

could not be adjudicated until the court resolved in the present case the questions whether Mr. Parker became a member of the LLC and whether the LLC thus should have continued rather than been dissolved.

On remand in the present case, the Parkers were permitted to amend the complaint, adding claims of breach of fiduciary duty, conversion, and trespass to personal property, and seeking an accounting. The trial court, however, subsequently granted partial summary judgment to the bank, ruling that the Parkers were precluded from basing any new cause of action on the bank's actions subsequent to the 2007 order initially granting summary judgment to the bank. The trial court's ruling rested on the conclusion that the bank had the authority to transfer the properties to itself, pursuant to a valid trial-court order that empowered the bank to take actions necessary to dissolve the LLC.

In July 2017, the Parkers again moved to amend the complaint, to "clarify" the existing claims, including the claim for an accounting, particularly with respect to the bank's transfer of the LLC's assets. The trial court denied the motion, ruling that the motion was untimely and that the Parkers would be limited at trial to proving losses attributable to the bank's actions in 2003. The trial court's pretrial order

reiterated that the Parkers were foreclosed from presenting to the jury "claims that challenged the validity of [the bank's] distribution of the assets of the LLC."

In very brief summary, the Parkers introduced the following evidence at trial. Mr. Bealer contributed three residential rental properties to the LLC. Ms. Parker purchased a one-third interest in the LLC for $200,000. Ms. Parker executed a promissory note to Mr. Bealer to finance the purchase and made monthly payments of $649 on the note. Ms. Parker and Mr. Bealer agreed that, during his lifetime, Mr. Bealer would receive Ms. Parker's share of the net income from the LLC.

Less than a month after Mr. Bealer's death in January 2003, the Parkers executed an amendment to the operating agreement that transferred half of Ms. Parker's interest in the LLC to Mr. Parker. Mr. Parker was added as a member of the LLC, and the Parkers also elected to continue the LLC as the LLC's two members.

The parties stipulated that, from the date of Mr. Bealer's death through February 2018, the LLC distributed over $1.3 million to Mr. Bealer's estate. The parties also stipulated that, as of April 2018, the properties transferred out of the LLC had been assessed as having a net value of approximately $5 million.

The jury determined that (a) Mr. Parker was not a member of the LLC at the time of Mr. Bealer's death but became a member after Mr. Bealer's death; and (b) the Parkers validly elected to continue the LLC. The jury awarded the Parkers over $1.3 million in damages -- the stipulated amount of the LLC's distributions.

The Parkers filed two post-judgment motions, one seeking prejudgment interest on the jury award and the other seeking to amend the judgment to add more than $5 million, which was the stipulated value of the properties transferred out of the LLC. The bank filed a motion seeking judgment as a matter of law. The trial court declined both sides' requests to alter the judgment.

## II. Bank's Challenges to Verdict

The bank argues that it was entitled to judgment as a matter of law. We review the denial of judgment as a matter of law de novo. *Bd. of Trs. of Univ. of District of Columbia v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009). Judgment as a matter of law is warranted "only if no reasonable juror, viewing the evidence in the light most favorable to the prevailing party, could have reached the verdict in that party's favor." *Sullivan v. AboveNet Commc'ns, Inc.,* 112 A.3d 347, 354 (D.C. 2015)

(internal quotation marks omitted). We see no basis to grant judgment as a matter of law to the bank.

First, the bank renews the argument that the operating agreement cannot reasonably be interpreted to permit the addition of Mr. Parker as a member after Mr. Bealer's death, because as soon as only one member remained, the LLC could take no action other than winding itself down. In the first appeal, however, we held that the agreement was ambiguous on that issue, and we therefore remanded for trial on the issue. *Parker*, 30 A.3d at 154-55 (describing as reasonable Parkers' position that agreement permitted addition of Mr. Parker after Mr. Bealer's death, and remanding for factfinder to consider, among other things, "whether a valid transfer of one half of Ms. Parker's interest to her husband and an election to continue operations were effected by the January 30, 2003 Amendment"). That ruling binds us as a division of the court. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). That being so, we need not consider whether the ruling also binds us under the law-of-the-case doctrine.

Second, the bank argues that any purported addition of Mr. Parker was invalid, because adding a new member required the bank's consent. In making that argument, the bank relies on D.C. Code § 29-1039 (2001 ed.; repealed 2011)

("Unless otherwise provided in . . . an operating agreement, if a member who is an individual dies . . . , the [deceased] member's executor . . . or other legal representative may exercise all the member's rights for the purpose of settling such member's estate or administering such member's property, including any power the member had to transfer a membership interest."). The problem with the bank's argument is that the operating agreement in this case "otherwise provides," stating in Paragraph 12(c) that "[t]he Company [and] each Member . . . need deal only with Members so named or so admitted; they shall not be required to deal with any other person or entity by reason of . . . the death or termination of a Member, except as otherwise provided in [the] Agreement."

The bank argues, however, that the operating agreement cannot possibly mean what it says on that point, because the agreement elsewhere provides that the LLC and its remaining members do have to deal in certain respects with a deceased member's legal representative. Specifically, as previously noted, if an LLC continues after the death of a member, then "the estate or other legal representative of the [deceased] shall have the obligation to transfer the interest of the [deceased Member] to the Members who have elected to continue the Company." Contrary to the bank's suggestion, the agreement's provisions fit together quite sensibly. After Mr. Bealer's death, the LLC and its remaining member or members were not

required to deal with the bank, except (as specified in Paragraph 13 of the operating agreement) with respect to the purchase of Mr. Bealer's interest in the LLC. In other words, when the bank dissolved the LLC and transferred the LLC's properties to itself, the bank was not a member of the LLC, much less the managing member of the LLC. The consent of the bank therefore was not needed for Mr. Parker to be added as a member.

Third, the bank argues that before Mr. Bealer's death, when Mr. Parker and Ms. Parker jointly owned an interest in the LLC as tenants by the entirety, they were a single member, rather than two members. We need not address that argument. The jury apparently agreed with the bank on that point, rejecting the theory that Mr. Parker was a member of the LLC before Mr. Bealer's death and instead resting the verdict on the conclusion that Mr. Parker became a member after Mr. Bealer's death, when the Parkers divided their joint interest.

Finally, the bank argues that the 2003 amendment did not actually reflect an election for Mr. Parker to become a member of the LLC. The operating agreement does not by its terms require that members be added by written agreement, however, and the Parkers testified that Mr. Parker was in fact added as a member. Moreover,

the 2003 amendment can reasonably be interpreted as reflecting the addition of Mr. Parker as a member of the LLC.

In sum, we uphold the jury's verdict finding the bank liable to the Parkers for breach of contract. The Bank does not separately contest the amount of damages awarded: a little over $1.3 million, based on the bank's distribution to Mr. Bealer's estate of money to which the jury determined the Parkers were entitled. We therefore affirm that award. We address in the next part of the opinion the Parkers' claim that they should have been awarded additional damages.

### III. Parkers' Challenges

The Parkers raise three principal issues, which we discuss in turn.

### A. Dissolution of LLC and Transfer of Assets

### 1. Amending Verdict

Most broadly, the Parkers argue that the trial court should have amended the verdict by adding approximately $5 million in damages, to reflect the stipulated

value of the assets the bank transferred out of the LLC. We disagree. We assume for the sake of this argument that the jury was required to include in its damages award the consequences that flowed from the bank's actions in dissolving the LLC and transferring its assets without compensation to the LLC or its members. Even so, it is not clear that the proper measure of those damages would be the entire stipulated value of the transferred assets. To flag one of a number of possible complexities, if the bank had instead sold Mr. Bealer's interest in the LLC to the Parkers, the Parkers seemingly would have had to compensate the bank (as the representative of Mr. Bealer's estate). Specifically, the operating agreement (drafted in contemplation of there being three members of the LLC) provided that the remaining members would be required to pay one third of the assessed value of the LLC, less ten percent. The trial court therefore correctly declined to amend the verdict by simply adding the entire stipulated value of the transferred assets to the damages award.

## 2. Further Proceedings

In the alternative, the Parkers contend more narrowly that they are entitled to a new trial on the issue of the bank's responsibility for damages relating to the

dissolution of the LLC and the transfer of the LLC's assets. We agree with that contention.

As previously noted, the trial court precluded the Parkers from contending at trial that the bank acted wrongfully in dissolving the LLC and transferring the LLC's assets. If that ruling was incorrect, then the Parkers were unfairly hobbled in attempting to persuade the jury to hold the bank liable for those actions, whether as damages for the breach-of-contact claim or on the separate count of conversion. We conclude that the trial court's ruling was incorrect.

The trial court at various points gave three reasons for precluding the Parkers from trying to prove to the jury that the bank acted unlawfully in dissolving the LLC and transferring the LLC's assets: (1) the operating agreement gave the bank the authority to transfer the properties to itself; (2) the bank was operating under a valid trial-court order that empowered the bank to take actions necessary to dissolve the LLC; and (3) the Parkers did not timely raise claims resting on the illegality of the dissolution of the LLC and the transfer of the LLC's assets. We conclude to the contrary that the Parkers were entitled to try to prove to the jury that the bank acted unlawfully in dissolving the LLC and transferring the LLC's assets.

First, the operating agreement did not make the bank a member of the LLC, see *supra* Part II, nor did the agreement otherwise grant the bank the authority to dissolve the LLC or transfer the LLC's assets without compensation.

Second, the trial court's orders in this case did not immunize the bank from liability for dissolving the LLC and transferring the LLC's assets without compensation. The trial-court order on which the bank presumably relied did not authorize the bank to unilaterally transfer the LLC's assets to itself without compensation. Rather, the order stated that the LLC "shall be terminated in accordance with paragraph 15 of the company's Operating Agreement." Paragraph 15 did not give the bank the authority to transfer the LLC's assets to itself, let alone without compensation.

More fundamentally, the trial court's order was reversed by this court on appeal. *Parker*, 30 A.3d at 150-55. "It has long been well established that the reversal of a lower court's decision sets aside that decision, leaves it without any validity, force, or effect, and requires that it be treated thereafter as though it never existed." *Khadr v. United States*, 529 F.3d 1112, 1116 (D.C. Cir. 2008) (internal quotation marks omitted); *see also, e.g.*, *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 n.2 (3d Cir. 2007) ("[T]he effect of a reversal

of a judgment 'is to nullify it completely and to leave the case standing as if such judgment had never been rendered, except as restricted by the opinion of the appellate court.'") (quoting 5 C.J.S. *Appeal and Error* § 1106 (2007)).

This general principle has narrow exceptions. *See, e.g.*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293-94 (1947) (in certain circumstances, party may be held in contempt for violating order later reversed on appeal).  We see no basis for such an exception here, however.  To the contrary, a party that acts in reliance upon a favorable trial-court order that is subject to appeal does so at its peril, because the party may be held liable if the appellate court reverses the trial-court order and renders the party's actions unlawful. *See, e.g.*, *Moreland v. Campagni*, 103 F. App'x 193, 194 (9th Cir. 2004) (although appellant was entitled to act on basis of unstayed trial-court decision, appellant was liable for damages after trial court's decision was reversed on appeal); *Caspar v. Snyder*, 77 F. Supp. 3d 616, 630 (E.D. Mich. 2015) ("[A] reversal of a judgment will nullify the judgment as to the parties to the appeal in that litigation . . . ."); *Hasse v. Fraternal Order of Eagles #2421*, 658 N.W.2d 410, 413 (S.D. 2003) ("[T]he prevailing party at trial incurs liability for restitution to the opposing party if the former executes on a judgment that is reversed on appeal."); *Dixie Cty. Sheriff's Dep't v. Forfeiture of 1987 Ford Van*, 592 So. 2d 748, 749 (Fla. Dist. Ct. App. 1992) (sheriff's department that sold

van subject to trial-court forfeiture order "sold the van at its own risk while the prior appeal was pending," and was required to compensate owner for loss of property); *Ne. Bank of Lewiston & Auburn v. Murphy*, 512 A.2d 344, 349 (Me. 1986) (appellee "acted entirely at his own peril in relying upon" decision of intermediate appellate court while decision was "still subject to appeal"); 36 C.J.S. *Federal Courts* § 739 (2020) ("A lower court decree which is reversed generally does not protect parties acting pursuant to such decree prior to reversal.").

Third, the Parkers did not act belatedly to challenge the dissolution of the LLC and the transfer of the LLC's assets. The bank dissolved the LLC and transferred the LLC's assets to itself in late 2008 and early 2009. At that point, the case was on appeal in this court. *Parker*, 30 A.3d at 147. After we reversed the trial court's ruling and remanded for further proceedings in 2011, the Parkers promptly filed another lawsuit against the bank to challenge its actions in dissolving the LLC and transferring the LLC's assets to itself, including a claim for conversion. Once the trial court dismissed that case without prejudice (concluding that the matter was "simply not ripe for adjudication" based on the unresolved issues in this lawsuit), the Parkers promptly moved to amend. Moreover, the trial court granted that motion.

Finally, we note that we are not persuaded by the bank's passing contention that the Parkers waived this issue by failing to challenge the trial court's ruling precluding the Parkers from trying to establish the unlawfulness of the bank's actions in dissolving the LLC and transferring the LLC's assets. The Parkers fully briefed the issue in this court, the Parkers' notice of appeal specifically designated the trial-court orders at issue, and in any event a notice of appeal from a final judgment generally brings up the trial court's earlier rulings for review. *See, e.g.*, *Flax v. Schertler*, 935 A.2d 1091, 1099 (D.C. 2007) ("[A]n appeal of a final judgment draws into question all prior non-final rulings and orders.") (internal quotation marks omitted).

In sum, we hold that the Parkers are entitled on remand (1) with respect to their breach-of-contract claim, to seek to prove up additional damages arising from the bank's termination of the LLC and transfer of the LLC's assets; and (2) to submit to the jury their claim of unlawful conversion. Although the Parkers also raised claims of breach of fiduciary duty and trespass to personal property in the amended complaint, they have not sought relief as to those claims in this court, so we do not grant relief with respect to those claims. *See, e.g.*, *Bartel v. Bank of Am. Corp.*, 128 A.3d 1043, 1048 (D.C. 2015) ("[P]oints not raised on appeal are treated as abandoned.") (internal quotation marks omitted). The Parkers do raise on appeal the

trial court's order denying them leave to further amend the complaint with respect to their request for an accounting. It is not clear, however, whether the Parkers will wish to pursue that request in light of the disposition of this appeal. We leave that matter to be addressed if necessary on remand, noting only that our ruling in this appeal undermines at least some of the trial court's reasons for denying leave to amend. For example, for the reasons we have explained in this opinion, leave to amend should not be denied on the ground that the Parkers are foreclosed from challenging the bank's actions in terminating the LLC and transferring the LLC's assets.

The bank argues that certain evidence introduced in the first trial should be excluded at any retrial, under D.C. Code § 14-302(a) (2012 Repl.) (in civil action against representative of deceased person, judgment may not be rendered in favor of plaintiff based on plaintiff's uncorroborated testimony). Because it is unclear what evidence would be admitted at a new trial, we decline to address that issue at this time. *See, e.g.*, *DC Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Secs. & Banking*, 214 A.3d 978, 996 (D.C. 2019) (court "declin[es] to reach issues that may or may not arise again on remand") (internal quotation marks omitted).

### 3. Prejudgment Interest

Finally, the Parkers argue that the trial court erred in denying their motion for prejudgment interest on the jury's award. The parties appear to agree that we review that ruling de novo. We therefore proceed on that assumption without deciding the issue. *Mazor v. Farrell*, 186 A.3d 829, 832 (D.C. 2018). We remand for further proceedings on the issue of prejudgment interest.

Prejudgment interest "operates in part to compensate prevailing plaintiffs for the loss of the use of money that was wrongfully withheld by the defendant." *Mazor*, 186 A.3d at 832. "Statutes providing for prejudgment interest are thus remedial and should be generously construed so that the wronged party can be made whole." *Id.* (internal quotation marks omitted). The Parkers rely on D.C. Code § 15-108 (2012 Repl.), which provides for prejudgment interest in actions "to recover a liquidated debt on which interest is payable by contract or law or usage." "A liquidated debt is one which at the time it arose was an easily ascertainable sum certain." *Mazor*, 186 A.3d at 832 (internal quotation marks omitted).

The Parkers argue that the amount distributed by the LLC each year was easily ascertainable, because the LLC's annual statements reflected the amount for each

year, and the parties stipulated to the overall figure of a little over $1.3 million. The bank observes, however, that the ultimate amount that would eventually be distributed was not easily ascertainable in 2003, when in the bank's view the Parkers' claim accrued. Although we agree with the bank's observation, the issue is not when the Parkers' claim accrued, but rather when the bank's "debt arose." *Mazor*, 186 A.3d at 832; *see also* D.C. Code § 15-108 (prejudgment interest is to be paid from time when debt "was due and payable"). On the latter point, the Parkers in essence appear to argue that the bank's debt arose each year, when the bank failed to distribute to the Parkers the income reflected in the LLC's annual statement for that year. The Parkers further argue that those amounts for each year were easily ascertainable, which is demonstrated by the fact that the parties stipulated to the overall amount. We agree with the Parkers on those points, which the bank does not appear to dispute. We therefore hold that the amount of damages attributable to the bank's withholding of the LLC's distributions was easily ascertainable at the time those damages arose.

The trial court also appeared to suggest that the Parkers' claim for prejudgment interest should have been brought under D.C. Code § 15-109 (2012 Repl.), which permits a plaintiff to seek to prove an entitlement of prejudgment interest during trial, as an element of damages. Section 15-109 does not state that it

is an exclusive remedy, however, and we conclude that the Parkers therefore were free to choose to seek prejudgment interest instead under § 15-108.

Although we vacate the trial court's order denying prejudgment interest, we do not direct an award of prejudgment interest. As the bank points out, § 15-108 also requires that prejudgment interest "be payable by contract or law or usage." The trial court did not address that requirement, and we leave that issue for the trial court to determine in the first instance on remand. *See, e.g.*, *Velcoff v. MedStar Health, Inc.*, 186 A.3d 823, 829 (D.C. 2018) (remanding for trial court to consider issue in first instance).

Finally, we note that proceedings on remand may (or may not) result in an additional award of damages. We express no view as to whether prejudgment interest would or would not be available with respect to any such damages.

For the foregoing reasons, we affirm the jury's award of damages to the Parkers, vacate the judgment of the Superior Court in part, and remand for further proceedings. Specifically, the trial court on remand should (1) determine whether prejudgment interest on the jury's award of a little over $1.3 million is payable by contract or law or usage; (2) rule on any renewed motion to amend the complaint

with respect to the request for an accounting; and (3) hold a trial at which the Parkers are permitted to try to prove that the Bank's termination of the LLC and transfer of the LLC's property attempt (a) warranted an award of additional damages for their claim of breach of contract and (b) constituted conversion.

*So ordered.*