**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
**MAGISTRATE IN CHANCERY**

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 5, 2025

Josiah R. Wolcott, Esquire
Connolly Gallagher LLP
267 E. Main Street
Newark, Delaware 19711

William B. Larson, Jr., Esquire
Manning Gross + Massenburg LLP
1007 N. Orange Street, Suite 711
Wilmington, DE 19801

RE:   *Joan F. Appleby v. Mark Batty and Cynthia H. Batty*,
        C.A. No. 2023-1039-LM

Dear Counsel:

Pending before me is the Plaintiff's motion for summary judgment in her action requesting for the Court to find the Defendants violated a deed restriction that prohibits the extension or enlargement of the home, and to enter an order for injunctive relief. Briefing on the motion concluded on November 25, 2024. A telephonic oral argument on the motion was held on January 17, 2025. For the reasons explained below, I find the deed restriction to be unenforceable on its face and recommend the Plaintiff's motion for summary judgment be denied and for judgment to be entered in favor of the Defendants.

## I.     FACTUAL BACKGROUND[1]

By way of background, Plaintiff, Joan F. Appleby, and her now deceased husband, Robert Appleby, purchased the property that is the subject of this action, 18 East Third Street, New Castle, Delaware 19720 (hereinafter, the "Property"), on June 12, 1967.[2] The Property is in the New Castle County Historic District and was built circa 1798.[3] The home as it stands today consists of the original brick structure, an addition to the original structure that was built by the Appleby's in 1968 with an attached screened in porch, and then, the most recent addition, the elevator shaft that was built by the Batty's onto the side of the structure in the summer of 2023.[4]

### A.     The Execution of the Deed Restriction and the Sale of the Property

The Declaration of Restrictions (hereinafter "Deed Restriction") was executed on January 16, 2015, and was promptly recorded on January 22, 2015.[5] The Deed Restriction states in relevant part, "No extension or enlargement of the existing structures or erection of any additional permanent structures shall be permitted on

---

[1] Citations to the Docket, and if needed, the exhibits attached thereto are cited in the form of "D.I. __, Ex. #". Deposition transcripts are cited as "[Last Name] Dep.".

[2] D.I. 21, Ex. 2.

[3] *Id.*; Appleby Dep. 13:21-14:4.

[4] D.I. 21, Ex. 1; Appleby Dep. 13:21-14:23.

[5] D.I. 20, Ex. E; Appleby Dep. 55:16-20.

the Property without the prior written approval of the [Applebys], or their heirs, personal representatives, successors and assigns[.]"[6]

The Defendants here, Mark Batty and Cynthia H. Batty (collectively, the "Battys"), purchased the Property from Mr. and Mrs. Appleby on December 18, 2015.[7] On September 13, 2015, before their purchase, the Battys received a seller's disclosure, which indicated the existence of the Deed Restriction on the Property.[8] On September 20, 2015, the Battys met with the Plaintiff's real estate agent, Laura Greeley, with a representative of their own real estate agent, Nancy Morris, after having prepared and provided a list of questions specifically referencing more information on the Deed Restriction on the property.[9] The Defendants claim the Appleby's real estate agent informed them at this meeting that the Deed Restriction had not yet been recorded.[10] The parties dispute whether the documentation regarding the Deed Restriction was provided to the Defendants at the time of closing.[11]

---

[6] D.I. 20, Ex. E.

[7] D.I. 21, Ex. 4.

[8] D.I. 21, Ex. 6 at ¶5; D.I. 20, Ex. C.

[9] D.I. 21. Ex. 6 at ¶6-8.

[10] *Id.* at ¶8.

[11] *Id.* at ¶11-12; D.I. 24 at 21, n.68.

B.      The Construction of the Elevator Shaft

In July 2021, after owning the property for approximately seven years, Mr. Batty suffered a stroke, brain hemorrhage, and seizure that required him to take intensive medication that made it difficult for him to walk and keep his balance.[12] Due to Mr. Batty's mobility issues, and because of the fall risk posed with their bedroom being on the second floor, the Defendants began to build an elevator shaft onto the rear section of the property that was made up of the addition built by the Applebys in 1968.[13]

As part of the construction, the Battys hired an architectural firm to make a specific design made to harmonize any renovations with the surrounding New Castle County Historical District and comply with regulations created to preserve the historical nature of the area.[14] The design for the elevator shaft was approved by the City of New Castle Historic Area Commission in late 2022, and the City of New Castle approved the permit for the installation of the elevator shaft on April 4, 2023.[15]

---

[12] D.I. 21, Ex. 6 at ¶28-29.

[13] *Id.* at ¶30-31.

[14] D.I. 20, Ex. D at NO. 1(A)-(B).

[15] D.I. 21, Ex. 6 at ¶33; D.I. 20, Ex. D at NO. 1(B)-(C).

On April 5, 2023, Mr. Batty suffered another stroke that resulted in hospitalization and increased mobility issues.[16] This event prompted the immediate start of the elevator construction in the summer of 2023.[17]

The Plaintiff claims to have first learned of the construction of the elevator shaft in early July 2023 from a neighbor and first saw the elevator shaft on July 22, 2023.[18] After reviewing the language of the Deed Restriction, Ms. Appleby concluded that the elevator shaft was in violation of the Deed Restriction because it extended beyond the original footprint of the home, and because it "took away from the historical integrity of the original building."[19] Plaintiff then reached out to a city official to inform him about the Deed Restriction in relation to the elevator shaft.[20]

On August 7, 2023, near the completion of the construction of the elevator shaft, the Batty's were approached by Jeffery A. Bergstrom, Building Official & Fire Marshal of the City of New Castle, who informed them of the Deed Restriction on the property and near this time they discovered that Ms. Appleby had been speaking with many city agencies regarding her objection to the installation of the elevator

---

[16] D.I. 21, Ex. 6 at ¶34.

[17] *Id.* at ¶34-35.

[18] Appleby Dep. 111:8-14; D.I. 20 at 8.

[19] Appleby Dep. 115:10-22; 64:6-65:18.

[20] *Id.* at 121:2-10.

shaft.[21] This prompted the Defendants to send a cease-and-desist letter to the Plaintiff on August 23, 2023, asking that she make no further attempts at stopping the already approved construction.[22] The elevator shaft construction was completed in early October 2023 but currently sits without an installed elevator due to the Plaintiff filing her complaint in mid-October of 2023.[23]

### C.    Procedural Posture

Plaintiff, Joan F. Appleby, filed the complaint in this action on October 16, 2023, requesting that the Court grant a declaratory judgment that Defendants are subject to the Deed Restriction and violated the Deed Restriction with the construction of the elevator shaft onto the subject property.[24] The Plaintiff requests that the Court enter relief in the form of a permanent injunction requiring the Defendants to remove the elevator shaft at their own expense.[25] On November 13, 2023, the Defendants answered Plaintiff's complaint and filed a counterclaim seeking a declaration that the Deed Restriction is unenforceable and no longer

---

[21] D.I. 21, Ex. 6 at ¶35; D.I. 20, Ex. D at NO. 2.

[22] D.I. 21, Ex. 6 at ¶36.

[23] *Id.* at ¶37.

[24] D.I. 1.

[25] *Id.*

encumber the Property.[26] The Defendants' answer asserted affirmative defenses including, but not limited to, failure to state a claim, estoppel, waiver, unclean hands, and laches.[27] On December 8, 2023, the Plaintiff moved to dismiss Defendants' counterclaim pursuant to Court of Chancery Rule 12(b)(6),[28] which the Court granted on May 8, 2024, ordering that the Defendants' counterclaim that seeks a declaration that the Deed Restriction is unenforceable are to be dismissed without prejudice.[29] On September 30, 2024, the Plaintiff moved for summary judgment.[30] The Defendants filed the answering brief in opposition to Plaintiff's motion for summary judgment on October 28, 2024,[31] and the Plaintiff's reply brief was filed on November 15, 2024.[32] A telephonic oral argument was held on January 17, 2025, after which I took the matter under advisement.[33]

---

[26] D.I. 2.

[27] *Id.*

[28] D.I. 3.

[29] D.I. 15 at 4-5.

[30] D.I. 20.

[31] D.I. 21.

[32] D.I. 24.

[33] D.I. 26.

## II.   ANALYSIS

A motion for summary judgment will be granted if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."[34] "In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[35] When the moving party has met this burden, the responsibility then shifts onto, "the non-moving party [to] 'adduce some evidence of a dispute of material fact.'"[36]

### A.   There are no genuine issues of material fact as to the enforceability of the Deed Restriction.

In the circumstance where both parties to the action present "conflicting evidence such that there is an issue of material fact, summary judgment must be

---

[34] Ct. Ch. R. 56(c).

[35] *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co.*, 853 A.2d 124, 126 (Del. Ch. 2004) (citing *Tanzer v. Int'l Gen. Inds., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979)).

[36] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014) (quoting *Metcap Sec. LLC v. Pearl Senior care, Inc.*, 2009 WL 513756, at *3 (Del. Ch. Feb. 27, 2009), aff'd, 977 A.2d 899 (Del. 2009)).

denied."[37] A material fact is one that "might affect the outcome of the suit under governing law."[38]

Here, there are no genuine issues of fact that are dispositive to whether the Deed Restriction is enforceable on its face. Although the parties disagree on whether the Deed Restriction is legally enforceable, within their briefing, they agree there are no genuine issues of material fact as to the issue of the enforceability of the Deed Restriction as written.[39]

Defendants contend that there are two genuine issues of material fact that preclude an entry of summary judgment in Plaintiff's favor.[40] One is to their defense of laches, and the second is to their argument that they lacked sufficient notice to render the restriction enforceable.[41] I do not find there to be any issues of material fact as to the issue of notice, a conclusion I have discussed the reasoning behind further below.

---

[37] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[38] *Id.* (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)).

[39] Plaintiff argues that no issues of material fact exist. D.I. 20 at 12 ("The underlying facts are undisputed."). Defendants argue the Deed Restriction is unenforceable as a matter of law arguing only that there remain issues of material fact as to the issues of notice and laches. D.I. 21 at 29, 32.

[40] D. I. 21 at 29.

[41] *Id.* at 29, 32.

1. **The Defendants had sufficient notice to bind them to the Deed Restriction because the Deed Restriction had been recorded and they received actual notice through the seller's disclosure.**

"Actual notice suggests the purchaser is aware of the deed restriction, while constructive notice suggests there is a properly recorded deed or other instrument that includes details of the restriction, and which is readily accessible via routine title search."[42] "Constructive notice cannot relieve a party of the consequences of a fraudulent representation or concealment of material fact[,]" however a party with actual notice of the existence of the Deed Restriction and the reasonable means to obtain more information as to the contents are not able to circumvent that notice through a showing of fraud or concealment.[43]

The Plaintiff asserts that notice, both actual and constructive, are proven on the non-disputed facts that the Deed Restriction was executed and recorded in January of 2015 and that the Seller's Disclosure that was provided to the Defendants

---

[42] *New Castle County v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 746 n.112 (Del. Ch. Dec. 30, 2013) (citing *Greylag 4 Maint. Corp. v. Lynch-James*, 2004 WL 2694905, at *5 (Del. Ch. Oct. 6, 2004)).

[43] *Heron Bay Prop. Owners Ass'n, Inc. v. CooterSunrise, LLC*, 2013 WL 3871432, at *9 (Del. Ch. June 27, 2013) (holding that although fraudulent representation or concealment of material fact overcomes any finding of constructive notice, it will not assist parties placed on actual notice of a restriction, even when they were unaware of its specific contents).

in September of 2015 identifies the existence of the Deed Restriction.[44] The Defendants argue that the motion for summary judgment should be denied because the question of whether they had notice, whether actual or constructive, of the Deed Restriction at the time of purchase is an issue of material fact.[45] The Battys claim they were misled by the Plaintiff's realtor, who had told them that the Deed Restriction had yet to be executed and although they had been informed of the existence of the Restriction on the property through the seller's disclosure, the conversation had left them with the understanding it had yet to be put into place.[46] The Parties also dispute whether the deed restriction was contained in any of the settlement paperwork provided to the Battys at closing.[47]

The Defendants have identified issues of fact that would be relevant to the question of constructive notice, however these details are not determinative to the Court's consideration of the issue of actual notice, which is established here by the parties' undisputed facts that the Battys received, read, and acknowledged the notice of the Deed Restriction in the seller's disclosure.[48] The Deed Restriction had been

---

[44] D.I. 21, Ex. 6 at ¶5; D.I. 20, Ex. E.

[45] D.I. 21 at 32.

[46] *Id.* at 3-4; Ex. 6 at ¶5-10.

[47] D.I. 21, Ex. 6 at ¶11-12; D.I. 24 at 21 n.68.

[48] D.I. 21, Ex. 6 at ¶5.

recorded and available for the Battys to find through a title search at the time they had received the seller's disclosure.[49] Once they were placed on actual notice of the Deed Restriction through the disclosure and during the time leading up to closing when they themselves claim they were unsure of the status of execution of the restriction, the responsibility was placed on them and their agents to determine its status which was available to the public upon its recording in January 2015.[50] The Battys had actual notice of the existence of the Deed Restriction at the time of sale.

### 2. The Defendants' laches argument does not create a material issue of fact.

Defendants argue there are issues of fact related to the laches defense.[51] "Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after learning of an infringement of his or her rights."[52] "[L]aches generally requires proof of three elements: 'first, knowledge by the claimant; second,

---

[49] D.I. 21, Ex. 5; D.I. 20, Ex. D.

[50] *See Heron Bay Prop. owners Ass'n, Inc. v. CooterSunrise, LLC*, 2013 WL 3871432, at *9 (Del. Ch. June 27, 2013) (finding that the Defendant had actual notice of a restriction because the restrictions were recorded and referenced in the contract of sale and the deed).

[51] D.I. 21 at 29.

[52] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013).

unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant.'"[53]

As to the issue of laches in this case, the parties dispute exactly when the Plaintiff became aware of the construction of the elevator and dispute the reasonableness of the time the Plaintiff waited to act to enforce the Restriction. Plaintiff argues only three months elapsed since she learned of the impending violation and when she filed suit, while Defendants argue that Plaintiff was placed on constructive notice on March 10, 2022 when their application to construct the addition was approved by the Historic Area Commission.[54] The Plaintiff first raised the potential Deed Restriction violation with a city official.[55] Upon learning that Plaintiff contacted the city official, the Defendants sent her a cease and desists letter in August of 2023, and Plaintiff filed this lawsuit two months later.[56]

"When applying the doctrine of laches, '[w]hat constitutes unreasonable delay and prejudice are questions of fact that depend upon the totality of the

---

[53] *Whittington v. Dragon Gp., LLC* 991 A.2d 1, 8 (Del. 2009) (quotation marks omitted) (quoting *Reid v. Spazio*, 970 A.2d 176, 182-83 (Del. 2009)).

[54] D.I. 21 at 31; D.I. 24 at 16-17.

[55] Appleby Dep. 121:2-10.

[56] D.I. 21, Ex. 6 at ¶36.

circumstances.'"[57] "An unreasonable delay can range from as long as several years to as little as one month."[58] "The temporal aspect of the delay is less critical than the reasons for it."[59] Although the question of what constitutes an unreasonable delay and prejudice to the defendant are issues of fact, I find them not material here. Given my finding below that the Deed Restriction is unenforceable as written, the issues of fact of the Defendants' laches defense are not material because they are not outcome determinative and are therefore not material to the ultimate judgment of the case.

## B. The Deed Restriction is unenforceable.

### 1. The Deed Restriction is unenforceable for its unreasonableness.

Restrictive covenants and deed restrictions are enforceable under Delaware law where the intent of the parties is clear, and the restrictions are reasonable.[60] "Restrictive Covenants may be enforced against a purchaser only if he or she has

---

[57] *Lebanon County Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1209 (Del. Ch. 2022) (quoting *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002).

[58] *Whittington*, 991 A.2d at 7-8 (citing *Cooch v. Grier*, 59 A.2d 282, 287-88 (Del. Ch. 1948) and *Stengel v. Rotman*, 2001 WL 221512, at *7 (Del. Ch. Feb. 26, 2001)).

[59] *Id.* at 8.

[60] *Mendenhall Village Single Homes Ass'n v. Harrington*, 1993 WL 257377, at *2 (Del. Ch. June 16, 1993).

notice, either actual or constructive, of their existence."[61] "[A]s a general rule the party advocating for the land use restriction bears the burden of demonstrating the restriction is valid and enforceable."[62] Plaintiff, citing to the cases *Bagley* and *Dover Historical Society*, appears to argue that historical preservation restrictions for the construction of additions and new structures are reasonable.[63] Disregarding the fact that *Bagley* was decided by a court outside of the State of Delaware, both of these cases deal with restrictions prohibiting new construction without the approval of some sort of local historical committee and therefore inherently have baked into them the implied standard of historical preservation.[64] Here, not only have the Battys gained the approval of the governing historical association,[65] but the Deed Restriction as written says nothing of historical preservation.[66]

Plaintiff also cited the facts in *Tusi*, claiming the approved restriction therein prohibiting construction of a detached garage was comparable to the present

---

[61] *New Castle County v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 746 (Del. Ch. 2013) (quotation marks omitted).

[62] *Id.*

[63] D.I. 20 at 15; *Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103 (Del. 2003); *Bagley v. Found. for Pres. of Hist. Georgetown*, 647 A.2d 1110 (D.C. 1994).

[64] *Dover Hist. Soc.*, 838 A.2d at 1107; *Bagley*, 647 A.2d at 1111.

[65] Appleby Tr. 113:14-114:22.

[66] D.I. 20, Ex. E.

restriction at hand.[67] The restriction approved by the Court in *Tusi* differs from the restriction here in that the *Tusi* restriction establishes clear parameters that only allow the construction of "a private garage for not more than two cars,"[68] whereas here, the Plaintiff placed a prohibition on all construction without the standardless approval of the Plaintiff and her progeny. I cannot agree with Plaintiff's argument that restrictive covenants that prohibit construction of new structures and additions without the permission of a third party are generally reasonable because Delaware law requires a clear and precise permissions mechanism that prevents "arbitrary, capricious, and therefore unreasonable" application from the approving party.[69]

> **2.    The Deed Restriction is unenforceable on its face because it lacks a fixed standard of review that would prevent inconsistent and arbitrary application from the party tasked with approval.**

Restrictions on land use are historically disfavored at law and limitations made by private individuals in particular "are construed narrowly in favor of the

---

[67] *Tusi v. Mruz*, 2002 WL 31499312 (Del. Ch. Oct. 31, 2002).

[68] *Id.* at *3 (holding that the defendant was in violation of the restriction when they built a garage that was for three cars with an attached office).

[69] *Wild Quail Golf & Country Club Homeowners Ass'n, Inc. v. Babbitt*, 2022 WL 211648, at *3 (Del. Ch. Jan. 11, 2022).

landowner."[70] Deed restrictions that require prior approval "must not be impermissibly vague, imprecise or unclear[,]" and "any doubts as to its reasonableness [must] be resolved in favor of landowners."[71] The restriction must contain fixed standards to "constrain subjectivity and promote even-handed application."[72] "Covenants restricting use … may [not] be applied if vague or otherwise permissive of arbitrary enforcement."[73]

Deed restrictions are contracts and will be governed as such under the same principals of contract law.[74] In pursuit of deciphering the intent of the parties, the Court must use the plain and ordinary language of the restriction and may only use extrinsic evidence to deduce the true intent of the parties if that language is deemed ambiguous such that it is "reasonably or fairly susceptible of different interpretations

---

[70] *Wilmington Friends School, Inc. v. Alapocas Maintenance Corp.*, 2022 WL 2134679, at *1 (Del. Ch. June 14, 2022).

[71] *Dawejko v. Grunewald*, 1988 WL 140225, at *4 (Del. Ch. Dec. 27, 1988); *see also Dolan v. Vill. of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 2810724, at *3 (Del. Ch. Oct. 21, 2005).

[72] *Lawhon v. Winding Ridge Homeowners Ass'n, Inc.*, 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008).

[73] *Wilmington Friends School, Inc.*, 2022 WL at *1.

[74] *Benner v. Couns. of Narrows Ass'n of Owners*, 2014 WL 7269740, at *8 (Del. Ch. Dec. 22, 2014) (citing *Goss v. Coffee Run Condo. Counc.*, 2003 WL 2185388, at *7 (Del. Ch. Apr. 30, 2003)).

or may have two or more different meanings."[75] The lack of clear, precise and fixed standards in the plain language of a deed restriction will "render[] that portion of the deed restriction as unenforceable, not ambiguous," meaning extrinsic evidence would not be admissible for the Court to consider the intended standard the parties meant to imbed within the deed restriction.[76]

In the present instance the Deed Restriction language reads, in relevant part, as follows: "No extension or enlargement of the existing structures or erection of any permanent structures shall be permitted on the Property without the prior written approval of the Declarants, or their heirs, personal representatives, successors and assigns[.]"[77] Unlike many cases described above, the Deed Restriction does not require the approval of a review board or a home owners association, but by an individual and her heirs seemingly into perpetuity. Nevertheless, this restriction that requires prior approval for any extensions or enlargement of the existing buildings or construction of new structures onto the property, whether approved by a committee or by a private individual, should still be reviewed as an architectural review covenant.

---

[75] *Id.* (citing *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996).

[76] *Benner*, 2014 WL at *8.

[77] D.I. 20, Ex. E.

The Plaintiff attempts to argue the restriction is clear, reasonable, and incapable of arbitrary application by pointing to evidence that would state the intent of the Applebys when creating the Deed Restriction. The Plaintiff points to the extrinsic facts of the home's location in the historic district, the Applebys past efforts to restore and maintain the property in a specific way, and the Plaintiff's statements during her deposition of her perception that the elevator shaft lacks symmetry in a way that would not align with the specific historical style of the building and the community surrounding it.[78] Due to a lack of a written standard of review within the restriction,[79] the Plaintiff suggests that external evidence should be considered for the Court to determine Ms. Appleby's intent to interpret a fixed application standard from the writing of the restriction. However, the lack of a clear and precise standard within the writing alone is cause for the Court to consider the restriction unenforceable, not ambiguous and up for interpretation, so the extrinsic evidence the Plaintiff attempts to use to insert a standard where there is none are inadmissible.[80]

The Plaintiff also argues that the Deed Restriction is clear in its application because it specifically restricts the construction of extensions onto the home and the

---

[78] Appleby Tr. 115:15-22; D.I. 20 at 13-14.

[79] *Id.* at 70:18-71:8.

[80] *Benner*, 2014 WL at *8.

building of additional permanent structures. Plaintiff claims that the language provides a sufficient standard to avoid arbitrary enforcement.[81] I disagree. First, the description requiring preapproval for any "extension or enlargement of the existing structures or erection of any additional permanent structures" is overly broad and imprecise such that it would apply for what is essentially any permanent construction on the property.[82] Secondly, the description is phrased with the condition of gaining prior approval, indicating that the broad category of all construction of permanent structures onto the land is not a guideline for those tasked with granting or denying approval, but a qualifier for the requirement to seek approval. Finally, the suggestion that the sole guideline for approval is a determination of whether the construction of the new permanent structure is outside the property's original footprint is contradicted by the plaintiff's own deposition testimony and supporting briefing indicating that it was the elevator shaft's lack of symmetry and historical inaccuracy that led her to the conclusion that the Defendants violated the Deed Restriction, suggesting that without those issues she may have approved construction.[83]

---

[81] D.I. 20 at 13-16.

[82] D.I. 20, Ex. E.

[83] D.I. 20 at 14; Appleby Tr. 115:15-22.

At oral argument, Plaintiff argued that the Court could revise the restriction in accordance with the *Yu* case. Disregarding the fact that *Yu* is currently stayed amid the exceptions process, the facts therein differ greatly from those before me today. In *Yu*, the Court found that while one portion of the Deed Restriction was unenforceable, another section was enforceable.[84] Plaintiff asks that I simply disregard any portion that is unenforceable, such as the portion that requires "the prior written approval of the Declarants…."[85] Plaintiff argues that the Deed Restriction clearly shows that Plaintiff did not want an "extension or enlargement of the existing structure or an erection of an additional permanent structure on the premises." Plaintiff believes the *Yu* case directs that this Court should simply strike the portion of the restriction that is unenforceable. However, this case is distinguishable from *Yu* because here, the Plaintiff is referring to revising a sentence to fit the Plaintiff's argument, while in *Yu*, the Court looked at two different sections

---

[84] *Yu v. Cahill*, 2024 WL 4100859, at *6 (Del. Ch. Sep. 6, 2024).

[85] D.I. 21, Ex. E.

of a deed restriction.[86] Moreover, in *Yu,* the Court indicated the deed restrictions must be read "as a whole, giving effect to each term and provision."[87]

The Deed Restriction contains no standard of enforcement to guide those engaging in the approval process to ensure uniform and non-arbitrary enforcement of the restriction, and I decline to revise the language of the Deed Restriction to fit Plaintiff's argument that she *now* wants to remove the approval process. For the reasons stated herein, the Deed Restriction is unenforceable on its face and must be deemed invalid.

### C.     Injunctive relief is not warranted.

The Plaintiff seeks injunctive relief, requiring the Defendants to remove the elevator shaft at their own cost in compliance with the Deed Restriction. To obtain a permanent injunction, a plaintiff must show by a preponderance of the evidence: "(1) actual success on the merits of the claims; (2) that the plaintiff will suffer irreparable harm if injunctive relief is not granted; and (3) that the harm to the plaintiff outweighs the harm to the defendant if an injunction is granted."[88] Although

---

[86] *Yu*, 2024 WL at *6 ("Section 2's unenforceability does not negate my separate review of Section 7.").

[87] *Id.* (Del. Ch. Sep. 6, 2024) (quoting *Centene Corp. v. Accellion, Inc.*, 2022 WL 898206, at *5 (Del. Ch. Mar. 28, 2022)).

[88] *Benner v. Counsel of Narrows Ass'n of Owners*, 2014 WL 7269740, at *11 (Del. Ch. Dec. 22, 2014) (citing *Examen, Inc. v. VantagePoint Venture P'rs 1996*, 2005 WL

the Defendants were under sufficient notice to be bound by the Deed Restriction, the Plaintiff is not entitled to judgment in the form of permanent injunction as a matter of law because she cannot prove by a preponderance of the evidence actual success on the merits of the claim that the Deed Restriction is enforceable on its face. To demonstrate actual success, the Plaintiff needed to establish that the Deed Restriction is enforceable and was breached by the Defendants. For the reasons previously explained on why the Deed Restriction is unenforceable, the Plaintiff's claim for injunctive relief would fail because she is not able to demonstrate actual success on the merits.

**D.    The record has been sufficiently developed for the Court to make a final judgment on the viability of the Deed Restriction on its face.**

"When a party moves for summary judgment under Chancery Court Rule 56, and the court concludes that the moving party is not entitled to summary judgment, and the state of the record is such that the nonmoving party clearly is entitled to such relief, the judge may grant final judgment in favor of the nonmoving party.  The

1653959, at \*2 (Del. Ch. July 7, 2005)); *see also Civ. Ass'n of Surrey Park v. Riegel*, 2022 WL 1597452, at \*9 (Del. Ch. May 19, 2022) ("The burden of proof for these claims and defenses is by a preponderance of the evidence.").

form of the pleadings should not place a limitation upon the court's ability to do justice."[89]

The record, consisting of the Deed Restriction submitted within both parties' briefing and the non-disputed agreed upon facts, is sufficiently developed for the Court to enter judgment for the nonmoving party, the Defendants.[90] With a finding that the Deed Restriction is unenforceable, this matter can be resolved at this juncture without proceeding to trial.

## III. CONCLUSION

For the reasons detailed above, I find that the Plaintiff's motion for summary judgment must be denied and deem it appropriate to enter judgment in favor of the Defendants. Although there are no issues of material fact in dispute, the Plaintiffs are not entitled to judgment as a matter of law. Based on the sufficiently developed record I find the Deed Restriction to be unenforceable on its face and must enter judgment in favor of the Defendants.

---

[89] *Perik v. Student Resource Ctr.*, LLC, 2024 WL 181848, at *6 n.50 (Del. Ch. Jan. 17, 2024) (quoting *Bank of Del. v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1199 (Del. 1987)).

[90] D.I. 20, Ex. E; D.I. 21, Ex. 5.

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[91] Absent timely exceptions, the parties shall file a proposed implementing order within fourteen days that includes a notification to the Recorder of Deeds about the Deed Restriction.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[91] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").